**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              :
**STEPHON BROWN,**                            :
                                              :
       **Plaintiff,**                :
                                              :          **Case 1:17-cv-00348-RDM-GMH**
       **v.**                       :
                                              :
**DISTRICT OF COLUMBIA,** *et al.***,**        :
                                              :
       **Defendants.**               :
_____:


**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT DISTRICT OF**
<u>**COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. 3

INTRODUCTION ............................................................................................................... 5

STATEMENT OF FACTS .................................................................................................. 5

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

      I.     Mr. Brown Has Sufficiently Stated a Claim for Relief Under the
           IDEA Because the District Completely Denied Him His Right to a
           FAPE, Despite His Learning Disability..................................................... 7

           A.    The DOE letters on which the District relies lack
                   persuasive power and are contrary to case law. .......................... 8

           B.    The District cannot avoid its obligations under the IDEA....................... 11

           C.    The District misunderstands the requirements of 34 C.F.R.
                   § 300.154............................................................................... 13

      II.    Mr. Brown Has Sufficiently Alleged that the District Violated
           Section 504 by Denying Him a FAPE. .................................................. 14

           A.    Mr. Brown need not prove that the District denied him a
                   FAPE "solely" because of his disability. ................................... 15

           B.    Mr. Brown has adequately alleged that the District acted
                   with bad faith or gross misjudgment in denying him a
                   FAPE.................................................................................... 17

CONCLUSION................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Choate,*
    469 U.S. 287 (1985) ............................................................................................... 15

*Anderson v. Duncan,*
    20 F. Supp. 3d 42 (D.D.C. 2013) ......................................................................... 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 6

*\*Bitsilly ex rel. Denet-Yazzie v. Bureau of Indian Affairs,*
    253 F. Supp. 2d 1257 (D. N. Mex. 2003) ........................................................... 12

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................... 7

*Chaffin v. Kansas State Fair Bd.,*
    348 F.3d 850 (10th Cir. 2003) ............................................................................. 15

*Christensen v. Harris Cty.,*
    529 U.S. 576 (2000) ................................................................................................. 8

*\*D.L. v. District of Columbia,*
    109 F. Supp.3d 12 (D.D.C. 2015) ......................................................... 11, 16, 17

*\*District of Columbia v. Abramson,*
    493 F. Supp. 2d 80 (D.D.C. 2007) ...................................................................... 10

*\*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1,*
    137 S. Ct. 988 (2017) .............................................................................................. 7

*Fulton v. Goord,*
    591 F.3d 37 (2d Cir. 2009) ................................................................................... 15

*G ex rel. RG v. Fort Bragg Dependent Sch.,*
    343 F.3d 295 (4th Cir. 2003) ........................................................................... 8, 11

*Holy Land Found. For Relief & Dev. v. Ashcroft,*
    333 F.3d 156 (D.C. Cir. 2003) ............................................................................... 7

*Kingsman Park Civic Ass'n v. Williams,*
    348 F.3d 1033 (D.C. Cir. 2003) ............................................................................. 6

*Macharia v. United States,*
    334 F.3d 61 (D.C. Cir. 2003) ................................................................................. 6

*Myvett v. Williams,*
    638 F. Supp. 2d 59 (D.D.C. 2009) ........................................................................... 6

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ............................................................................................... 8

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,*
    535 U.S. 635 (2002) .............................................................................................. 15

**Statutes**

20 U.S.C. §§ 1400-1482 .............................................................................................. passim

25 U.S.C. §§ 2501-2511 ................................................................................................. 12

29 U.S.C. § 794 ........................................................................................................... passim

D.C. Code § 24-101 ........................................................................................................ 6

**Regulations**

34 C.F.R. § 104 ............................................................................................................. 14

34 C.F.R. § 300 ........................................................................................................... 8, 13

D.C. Mun. Regs. tit. 5, § 3000 .................................................................................... 11

# INTRODUCTION

Plaintiff, Stephon Brown, hereby opposes Defendant District of Columbia's ("the District") Motion to Dismiss the Amended Complaint ("Motion").  ECF No. 14.  For sixteen months—the entirety of Mr. Brown's incarceration in a Federal Bureau of Prisons ("BOP") facility—he lacked access to a high school education and diploma program and the specialized instruction and related services, to which he is entitled under both the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.  Mr. Brown's education stalled, and in some areas regressed, resulting in the deprivation of Mr. Brown's federally guaranteed civil right to a free appropriate public education ("FAPE"). Because Mr. Brown has sufficiently alleged that the District remained responsible during his period of incarceration for ensuring his receipt of a FAPE, the Court should deny the District's Motion to Dismiss.

# STATEMENT OF FACTS

Mr. Brown is and has always been a resident of the District.  Am. Compl. ¶¶ 5, 19–20, 24, 31.  He remained a District resident during his incarceration at Federal Correctional Institution Hazelton ("FCI Hazelton") in West Virginia.  *Id.* ¶ 31.  As a student with a Specific Learning Disability, Mr. Brown has been eligible for special education and related services under both the IDEA and Section 504 since elementary school. *Id.* ¶ 19.

In December 2014, Mr. Brown was arrested for a felony violation of the D.C. Code and detained, pre-trial, in D.C. Jail.  *Id.* ¶¶ 21–22. While Mr. Brown was incarcerated in D.C. Jail, the District continued to provide him with access to specialized instruction and related services pursuant to his IEP under the IDEA.  *Id.* ¶ 21. Mr. Brown was subsequently convicted as an adult under District law and sentenced to a period of incarceration in an adult prison.  *Id.* ¶ 22. Individuals convicted (as adults) of a felony violation of the D.C. criminal code and sentenced to

a term of incarceration serve their sentences in BOP facilities.  *See* D.C. Code § 24-101; Am.

Comp.¶¶ 16–17.  While incarcerated in BOP facilities, these individuals are classified as "D.C.

Code Offenders."  *Id.* There is no adult prison within the District, nor does the District operate its

own adult prison. *Id.* ¶ 16.

 Mr. Brown entered FCI Hazelton, a BOP facility, in July 2015, where he remained until

he completed his sentence in November 2016.  *Id.* ¶ 22. Upon transferring Mr. Brown to FCI

Hazelton, the District ceased providing any special education or related services to Mr. Brown,

as required by his IEP. The District also failed to take any action to ensure that the BOP or a

third party would provide such services. *Id.* ¶ 23. By the time Mr. Brown returned to the District

in November 2016, he had lost more than an entire school year of academic instruction and

special education.  *Id.* ¶¶ 24–28.

## LEGAL STANDARD

 To survive a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure

12(b)(6), the complaint must contain "any set of facts consistent with the allegations."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544 (2007).  A claim survives a motion to dismiss if it pleads

"enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

The complaint need only set forth a short and plain statement of the claim so as to give the

defendant fair notice of the claims and the grounds upon which it rests.  *Myvett v. Williams*, 638

F. Supp. 2d 59, 63 (D.D.C. 2009) (citing *Kingsman Park Civic Ass'n v. Williams*, 348 F.3d 1033,

1040 (D.C. Cir. 2003)).  "In resolving a Rule 12(b)(6) motion, the court must treat the

complaint's factual allegations, including mixed questions of law and fact, as true and draw all

reasonable inferences therefrom in the plaintiff's favor."  *Myvett*, 638 F. Supp. 2d at 64 (citing

*Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003); *Holy Land Found. For Relief &*

*Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002)).

## ARGUMENT

**I.      Mr. Brown Has Sufficiently Stated a Claim for Relief Under the IDEA Because the District Completely Denied Him His Right to a FAPE, Despite His Learning Disability.**

To establish a claim under the IDEA, the plaintiff must show that a State covered by the

IDEA failed to provide a disabled student with an appropriate public education in conformity

with the student's individualized education program ("IEP").[1]  *Endrew F. ex rel. Joseph F. v.*

*Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (internal citations omitted).  The IEP is

"the centerpiece of the [IDEA's] education delivery system for disabled [students]."  *Endrew F.*,

137 S. Ct. at 994 (internal citations omitted).  Here, the District denied Mr. Brown his

educational rights altogether, despite knowing of his disability.  Am. Compl. ¶¶ 22–28.  Mr.

Brown is a student with a learning disability.  Am. Compl. ¶ 40.  When the District intentionally

refused to address Mr. Brown's learning disability while he was incarcerated at FCI Hazelton,

they left Mr. Brown in an educational No Man's Land—without any educational rights.  Am.

Compl. ¶ 2.  Accordingly, the District is liable to the Plaintiff.

In seeking dismissal of Mr. Brown's IDEA claim, the District primarily argues that it

"lacks the authority to control or direct a student's education while the BOP has custody of that

student."  Def.'s Mem. at 2.  In support, the District misdirects the Court in three ways.  First, the

District cites to "guidance" letters from the United States Department of Education ("DOE").

Def.'s Mem. at 4-5 (citing *Letter to Yudien* (Aug. 19, 2003) and *Letter to Mahaley* (March 2,

---

[1]  The plaintiff must also exhaust all administrative remedies before bringing an IDEA lawsuit where the denial of a FAPE is the gravamen of the complaint. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017).  Here, exhaustion is not an issue.  *See* Am. Compl. ¶¶ 8-12.

2011)).[2]  Second, the District misapplies the out-of-circuit case *G ex rel. RG v. Fort Bragg Dependent Sch.*, 343 F.3d 295 (4th Cir. 2003).  Def.'s Mem. at 5-6.  Finally, the District misconstrues 34 C.F.R. § 300.154.  Def.'s Mem. at 6.

### A. The DOE letters on which the District relies lack persuasive power and are contrary to case law.

The District's reliance on two DOE guidance letters, *Letter to Yudien* and *Letter to Mahaley*, for the assertion that its obligation under the IDEA to ensure a FAPE to its students with disabilities simply disappears when these students leave the District and enter federal custody, even while retaining their residency in the District, is flawed.  First, as the District concedes, the "letters lack the force of law."  Def.'s Mem. at 5.  Moreover, as the Supreme Court has made clear, the letters are not entitled to the deference afforded to agency regulations.  *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000).  Instead, "interpretations contained in formats such as opinion letters are entitled to respect," pursuant to *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), "but only to the extent that those interpretations have the power to persuade."  *Christensen*, 529 U.S. at 587 (internal quotation marks omitted).

Here, the letters lack "the power to persuade."  In *Letter to Mahaley*, the sole basis for the conclusion that the District does not have to provide a FAPE to its students with disabilities incarcerated in federal prisons is that such a scenario is not explicitly spelled out in the IDEA.  This is the full extent of its reasoning.  The reasoning of *Letter to Yudien* also falls apart upon further review.  On one hand, the letter correctly explains that "when a youth with disabilities is referred or placed by the State into an out-of-State facility, the referring State is generally responsible for ensuring that FAPE is available to the youth during the course of the youth's

---

[2] Both letters are attached as exhibits to the District's Motion to Dismiss.  *See* ECF Nos. 14-3 and 14-4.

placement in that facility." *Letter to Yudien* at 2.  Thus, if a District resident is incarcerated in a

Maryland state prison, the District would remain responsible for ensuring provision of a FAPE.

On the other hand, it inexplicably concludes that no one—not even the referring State—is

responsible for ensuring receipt of a FAPE for individuals placed in the federal correctional

system. *Id.* at 2.  Why the District would remain responsible for ensuring provision of a FAPE if

a District resident were incarcerated in a Maryland state prison, but not in a federal prison, is left

a mystery.  Given that District residents like Mr. Brown are sent to federal facilities pursuant to

the National Capital Revitalization and Self-Government Improvement Act of 1997 ("the

Revitalization Act"), Pub. L. No. 105-33, 111 Stat. 734 (codified at D.C. Code § 24-101), as a

substitute for being sent to a prison in the District (since the District no longer maintains a long-

term prison), the District's responsibility for continuing its IDEA obligations should be

particularly clear in this unique context.  Yet *Letter to Yudien* offers no explanation for these

inconsistent conclusions, rendering it unpersuasive.

Second, the DOE letters' conclusion that States and the District are absolved of their

IDEA obligations as soon as their residents are transferred to federal custody is at odds with case

law holding States responsible under the IDEA when their residents are placed in schools or

facilities operated by third parties, such as private schools or out-of-state placements.

This important principle was most recently reaffirmed by the Supreme Court in *Endrew*

*F.*, a case concerning the level of educational benefit states must provide students with

disabilities with a FAPE under the IDEA. 137 S. Ct. at 1001.  The student's parents sued the

school district for reimbursement of the private school tuition they paid after the school district

had failed to offer their child more than a *de minimis* level of education, which they contended

did not provide a FAPE.  *Id.* at 997.  The school district did not argue—like the District does

here—that once the disabled student left its control by going from public school to private school, that it was no longer responsible for ensuring that the student received a FAPE.  *See id.* at 996–97.  The district's responsibility to provide its school-aged residents with disabilities with a FAPE remained whether the student was in public school or private school.  *Id.*  Likewise, the District's responsibility to provide Mr. Brown with a FAPE rests with the District whether Mr. Brown is incarcerated in a District facility or a facility operated by the federal government, another state, or a private entity.

This Court has also confirmed that the District retains responsibility for ensuring a FAPE under the IDEA even where the resident student is enrolled in a school outside of the District. In *District of Columbia v. Abramson*, 493 F. Supp. 2d 80 (D.D.C. 2007), this Court ruled that the District of Columbia Public Schools ("DCPS") (the District's major Local Education Agency ("LEA")) was not relieved of its obligations as the LEA to make a FAPE available to a student simply because the student was enrolled in an out-of-District school.  In that case, DCPS refused to continue with the eligibility process after the student's parents placed him in a residential therapeutic private school in Connecticut.  *Id.* at 82.  Just as in this case, however, it was undisputed that the student in *Abramson* was a District resident, despite his placement in an out-of-state school.  *Id.* at 81.  There, the District even acknowledged that, "[o]nce a child has been determined disabled pursuant to the statute, and is deemed eligible to receive special education and related services, the LEA where the child *resides* must provide FAPE."  *Id.* at 85. In finding that DCPS remained responsible for providing the student with a FAPE, the Court relied on the text of the IDEA, stating that "'[a]ll children with disabilities *residing in the State*. . . who are in need of special education and related services, [must be] identified, located, and evaluated…'."  *See id.* at 85–86 (quoting 20 U.S.C. § 1412(a)(3)(A)).

There is no reason that the District's obligation under the IDEA to ensure provision of a FAPE to its residents would follow residents to private and out-of-state placements, but not to placements in federal facilities. Because the IDEA is federal law the Supremacy Clause is no obstacle to the District fulfilling its federal obligations in a federal facility housing its residents. The DOE letters on which the District relies provide no reasons for this discrepancy and therefore fail to lend persuasive support to the District's attempt to evade its obligations under federal law.

**B. The District cannot avoid its obligations under the IDEA.**

The District argues that it is powerless to uphold its IDEA responsibilities when its residents are in BOP custody. In support of this argument, the District mistakenly relies on *G* ex rel. *RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295 (4th Cir. 2003). Def.'s Mem. at 5–6. In *G* ex rel. *RG*, the Fourth Circuit held that a school system in North Carolina, which was operated by the United States Department of Defense ("DOD"), was not required to adhere to North Carolina's heightened standard for the provision of educational services to students with disabilities. 343 F.3d at 306. The court concluded that the school system, a federal entity, was obligated to meet only the requirements under the IDEA. 343 F.3d at 305. The court examined the federal statutes and implementing regulations pertaining to students' rights in DOD schools and found lacking "any clear expression of congressional intent to subject federal entities to state FAPE standards in providing education under the IDEA." *Id.* at 306.

In the present case, there is no dispute that the District follows the same federal standard set forth in the IDEA—not a higher state standard. *See D.L. v. D.C.*, 109 F. Supp. 3d 12, 23 (D.D.C. 2015) (quoting D.C. Mun. Regs. tit. 5, § 3000.1). And it is that minimum standard that

the District failed to meet in Mr. Brown's case. *G* ex rel. *RG*, therefore, offers the District no excuse for absolving itself of its responsibilities towards Mr. Brown under the IDEA.

Courts have shunned similar attempts to evade responsibility under the IDEA when doing so would leave students with disabilities in an educational No Man's Land. *See, e.g.*, *Bitsilly* ex rel. *Denet-Yazzie v. Bureau of Indian Affairs*, 253 F. Supp. 2d 1257 (D. N. Mex. 2003). In *Bitsilly*, the plaintiffs, two students of tribally-controlled schools, sued the Bureau of Indian Affairs and the Department of Interior, alleging that they were denied a FAPE under the IDEA. 253 F. Supp. 2d at 1260. The plaintiffs argued that the defendants were responsible for ensuring that disabled students received a FAPE at BIA-funded schools, even if those schools were tribally controlled. *Id.* The defendants asserted that, under the Tribally Controlled Schools Act ("TCSA"), they had no responsibility to monitor tribally-controlled schools to ensure their compliance with the IDEA. *Id.* at 1266.

The Court disagreed. It found that while the TCSA modified the relationship between the BIA and tribally-controlled schools, it did not "affect Defendants' considerable responsibilities to the Department of Education and to the children served by the IDEA and other federal statutes." *Id.* at 1267. Instead, it held: "Defendants' interpretation of the TCSA as setting its responsibilities at nil when a school is tribally controlled is unreasonable and manifestly contrary to both the IDEA and TCSA. It creates the absurd result of providing fewer protections for Indian disabled children than for non-Indian disabled children." *Id.* The court further explained that "Congress surely did not intend for Defendants simply to do *nothing* . . . ." *Id.* (emphasis in original). Here too, it is inconceivable that Congress intended that the federal rights of students with disabilities would simply vanish, with no party held responsible, upon transfer to a

federally-controlled facility.  The District's argument that it "holds no liability for [Mr. Brown's] educational deprivations," *see* Def.'s Mem. at 6, creates a similarly absurd result.

**C.  The District misunderstands the requirements of 34 C.F.R. § 300.154.**

The District's final argument in support of its untenable position that it was absolved of its FAPE obligations upon Mr. Brown's transfer to FCI Hazelton centers on a misunderstanding of 34 C.F.R. § 300.154(c).  Def.'s Mem. at 6.[3]  Section 300.154(a) requires states to enter into interagency agreements to ensure that even noneducational agencies ensure provision of a FAPE to eligible state residents.  The District states that "[e]very example used in § 300.154 refers to state sources of funding, and . . . [t]his strongly implies that the federal regulation targets *intrastate* activities."  Def.'s Mem. at 6 (emphasis added).  However, 34 C.F.R. § 300.154 deals with more than just state funding and thus, the correct implication is that the federal regulation targets *interstate* activities—similar to shipping Mr. Brown from the District of Columbia to FCI Hazelton in West Virginia.  That section of the C.F.R. addresses "Medicaid," which is a federal source of funding.  34 C.F.R. § 300.154(d)(1).  It further addresses "private insurance," which is also not state funded.  § 300.154(e).  Contrary to the District's analysis, a more accurate reading of 34 C.F.R. § 300.154 is that the IDEA regulations are interstate and national in scope.  Congress intended these regulations to require the District to provide Mr. Brown with a FAPE even if the BOP incarcerated him in West Virginia.  Accordingly, Mr. Brown has sufficiently stated a claim upon which relief can be granted and this Court should deny the District's Motion.

---

[3]  The District mistakenly cites the Amended Complaint at paragraph 32 for Mr. Brown's reference to 34 C.F.R. § 300.154.  Def.'s Mem. at 6.  This provision of the CFR instead appears in the Amended Complaint at paragraph 37.  Am. Compl. ¶ 37.

**II.     Mr. Brown Has Sufficiently Alleged that the District Violated Section 504 by Denying Him a FAPE.**

The District's failure to ensure Mr. Brown's receipt of a FAPE violated not just the IDEA, but Section 504.  29 U.S.C. § 794; 34 C.F.R. § 104.33.  The regulations implementing Section 504's nondiscrimination mandate for programs or activities receiving federal financial assistance require that "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap."  34 C.F.R. § 104.33(a).  A plaintiff can prevail under Section 504 by showing that defendants violated the IDEA in failing to provide a FAPE and exercised "either bad faith or gross misjudgment" in doing so.  *D.L. v. D.C.*, 109 F. Supp. 3d 12, 38 (D.D.C. 2015) (internal quotation marks omitted).

There is no dispute that the District failed to make any effort to provide Mr. Brown with the services necessary to ensure a FAPE, or to ensure that others provided them, for the sixteen months during which he was incarcerated at FCI Hazelton, even though he remained a resident of the District during that time.  Am. Compl. ¶ 12.  Finally, Mr. Brown has adequately pled facts demonstrating the District's bad faith or gross misjudgment in denying him a FAPE.  This is not a case merely challenging the sufficiency of services provided, where a defendant made some attempt to provide a FAPE, but the student alleges it was not enough.  This is a case where the defendant made *no* attempt to fulfill its statutory duties.  Am. Compl. ¶ 49.  The District's utter failure to comply with its statutory obligation to honor Mr. Brown's federal civil right to a free and appropriate education demonstrates bad faith or gross misjudgment.  *See* Am. Compl. ¶ 50 (alleging that the District acted intentionally or with deliberate indifference to Mr. Brown's protected rights).

The District argues that its failure to continue providing Mr. Brown a FAPE pursuant to Section 504 while he was incarcerated at FCI Hazelton should be excused for two reasons: (1) it did not deny Mr. Brown a FAPE "solely" because of his disability; and (2) its conduct did not rise to the level of bad faith or gross misjudgment.  Both arguments are easily rejected.

### A.  Mr. Brown need not prove that the District denied him a FAPE "solely" because of his disability.

The District maintains that it stopped providing Mr. Brown a FAPE "solely because he was convicted of a felony as an adult," and thus Mr. Brown was not discriminated against solely because of his disability, as required to state a claim under Section 504.  Def.'s Mem. at 7.  The District's argument, however, ignores that disparate impact claims, in addition to disparate treatment claims, are cognizable under Section 504.  *See, e.g.*, *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (noting that the "three available theories" of discrimination for plaintiffs under Section 504 are: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation"); *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 859–860 (10th Cir. 2003), *abrogated in part on other grounds by Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002), (recognizing that "Congress sought with § 504 . . . to remedy a broad, comprehensive concept of discrimination against individuals with disabilities, including disparate impact discrimination"); *Anderson v. Duncan*, 20 F. Supp. 3d 42, 53 (D.D.C. 2013) (explaining that both disparate treatment and disparate impact claims are cognizable under the Rehabilitation Act); *see also Alexander v. Choate*, 469 U.S. 287, 297–299 (1985) (assuming without deciding that Section 504 reaches certain disparate impact claims because, in passing Section 504, Congress recognized that discrimination against individuals with disabilities is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect" and that "much of the conduct that Congress sought to alter

in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent.").

Section 504's FAPE requirement stems from the statute's disparate impact theory of discrimination: it recognizes that without the affirmative provision of specialized educational services necessary to ensure a FAPE, students with disabilities will be disparately impacted and denied the opportunity to benefit meaningfully from their education. Plaintiffs need not establish that a school district specifically targeted a student because of his disability in failing to provide him a FAPE. Indeed, if such a requirement existed, school districts could never be held liable for 504 violations for failure to properly identify students with disabilities for services, since a defendant could not discriminate against a student solely because of his disability if it is not aware of the student's disability in the first place. Yet this Court has held defendants liable under such a theory. *See, e.g.*, *D.L.*, 109 F. Supp. 3d at 18.

Furthermore, under the District's cramped reading of Section 504, a defendant could justify denial of a FAPE to a student with a disability for any imaginable reason—eye color, income-level, or zip code—and still not run afoul of Section 504 so long as that reason is not the student's disability. Such a reading of Section 504 would obliterate its FAPE requirement. Properly understood as a disparate impact claim, a meritorious Section 504 claim for denial of FAPE need only establish that the qualified individual is entitled to services necessary to ensure a FAPE because he has a disability. In other words, solely because of his disability, Mr. Brown is entitled to a specialized education plan pursuant to Section 504. He need not establish, as he would to prove disparate impact, that he was denied these services solely because of his disability.

**B.   Mr. Brown has adequately alleged that the District acted with bad faith or gross misjudgment in denying him a FAPE.**

The District argues that Mr. Brown's complaint fails to establish that it acted with the requisite bad faith or gross misjudgment under Section 504.  Yet Mr. Brown alleged that the District acted "intentionally or with deliberate indifference to Mr. Brown's protected rights" in failing to take any action to ensure that he was provided with a FAPE at FCI Hazelton.  Am. Compl. ¶ 50.  As currently stated, Mr. Brown's factual allegations more than adequately establish the District's bad faith or gross misjudgment.

This Court previously held in *D.L.* that where the District's failure to comply with its obligations under Section 504 was widespread and substantial, it had acted with the requisite bad faith or gross misjudgment.  *See D.L.*, 109 F. Supp. 3d at 18 (describing this Court's 2011 decision, following a bench trial).  The District's actions in the present case are of a similar magnitude.  The District took no action to ensure Mr. Brown's provision of a FAPE while at FCI Hazelton; it simply absolved itself of all responsibility.  Furthermore, the District's conduct was not just isolated to Mr. Brown's case.  For twenty years, since enactment of the Revitalization Act, the District has voluntarily chosen to abandon its obligation to ensure access to a FAPE for its residents with disabilities entitled to special education services under the IDEA and Section 504 who are sent to federal prisons for felony violations of District law.  Am. Compl. ¶ 18.  Although, in *D.L.*, this Court later determined that, after 2011, the District had stopped acting with bad faith or gross misjudgment with respect to its obligation to identify children with disabilities attending public schools, it reached this conclusion only after finding that the District had made significant improvements to its provision of special education services.  *Id.* at 39.  Here, however, the District's refusal to make any attempt to provide qualified residents with

disabilities a FAPE has been unchanged and ongoing.  Accordingly, Mr. Brown has sufficiently alleged that the District has acted with bad faith or gross misjudgment in denying him a FAPE.

## <u>CONCLUSION</u>

For the reasons stated above, Mr. Brown respectfully requests that the Court deny Defendant District of Columbia's Motion to Dismiss the Amended Complaint.  Mr. Brown further requests that this Court hold a hearing on the merits of this Opposition pursuant to Local Civil Rule 7(f).

Respectfully submitted,


_____/s/_____
Sarah Comeau (Bar No. 1012980)
SCHOOL JUSTICE PROJECT
1805 7th Street NW, 7th Floor
Washington, DC 20001
Tel:  (202) 494-5388
Fax:  (202) 204-5838
scomeau@sjpdc.org

Jessica P. Weber (Bar No. MD17893)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street
Suite 1700
Baltimore, Maryland 21202
Tel:  (410) 962-1030
Fax:  (410) 385-0869
jweber@browngold.com

Kobie Flowers (Bar No. 991403)
BROWN GOLDSTEIN & LEVY, LLP
1717 K Street, NW
Suite 900
Washington, DC 20006
Tel: (202) 742-5969
Fax: (202) 742-5948
kflowers@browngold.com


Dated: May 11, 2017                    *Counsel for Plaintiff Stephon Brown*