# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEPHON BROWN,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 17-cv-0348-RDM-GMH** |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT FEDERAL BUREAU
## <u>OF PRISON'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

PROCEDURAL HISTORY ...................................................................................... 3

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ............................................................................................................ 5

    I.    The Court Has Jurisdiction Over Mr. Brown's Suit. ............................................ 5

        A.    Mr. Brown's Claim for Compensatory Education Is Not
              Moot. ............................................................................................. 5

        B.    BOP Is Not Immune from Suit. ................................................... 6

              1.    BOP Is Not Immune from Mr. Brown's Claims for
                   Nonmonetary Relief. ........................................................ 6

              2.    Attorneys' Fees and Expenses Are Available
                   Against BOP under the Equal Access to Justice Act. ...... 9

    II.    Under the IDEA and Section 504, Applied to BOP Through the
        Revitalization Act, BOP Was Obligated to Provide Mr. Brown
        with a FAPE While Mr. Brown Was in BOP Custody. ......................................... 9

        A.    The Revitalization Act Should Not Be Read to Impliedly
              Repeal Federal Special Education Law. .................................... 10

        B.    Congress Legislated Specifically When It Intended to
              Repeal Other Federal and District Law via the
              Revitalization Act. .................................................................... 12

        C.    BOP's Reading of the Revitalization Act Renders Statutory
              Language Superfluous. .............................................................. 14

         D.    Interpreting the Revitalization Act to Impose Special
              Education Obligations on BOP Does Not Produce
              "Absurd" Results. ..................................................................... 16

    III.    The Revitalization Act Required BOP to Fulfill the District's
        Obligations under Section 504, Including Providing Mr. Brown
        with a FAPE While in BOP Custody. .................................................................. 20

A.      By Failing to Provide a FAPE, BOP Violated Its Section
        504 Obligations. ................................................................................. 20

B.      Mr. Brown's Section 504 Claims Are Not Barred by
        Failure to Exhaust. ............................................................................. 21

        1.      Mr. Brown Has Exhausted His Section 504 Claim....................... 21

        2.      In the Alternative, Mr. Brown Was Not Required to
                Exhaust His Section 504 Claim Because Exhaustion
                Would Have Been Futile. .............................................................. 22

CONCLUSION ........................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agri Processor Co. v. NLRB*, 514 F.3d 1
(D.C. Cir. 2008) ............................................................................................ 12

*Am. Freedom Law Ctr. v. Obama*,
821 F.3d 44 (D.C. Cir. 2016) ........................................................................ 4

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ........................................................................ 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 4

*B.R. ex rel. Rempson v. District of Columbia*,
524 F. Supp. 2d 35 (D.D.C. 2007) ................................................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 4

*Bitsilly ex rel. Denet-Yazzie v. Bureau of Indian* Affairs,
253 F. Supp. 2d 1257 (D.N.M. 2003) ............................................................ 19

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ...................................................................................... 7

*Bowen v. Mich. Acad. of Family Physicians*,
476 U.S. 667 (1986) ...................................................................................... 8

*Chamber of Commerce v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ...................................................................... 6

*Clark v. Library of Cong.*,
750 F.2d 89 (1984) ........................................................................................ 8

*Corley v. United States*,
556 U.S. 315 (2009) ...................................................................................... 13, 14

*Cox v. Jenkins*,
878 F.2d 414 (D.C. Cir. 1989) ...................................................................... 21

*D.F. v. Collingswood Borough Bd. of Educ.*,
694 F.3d 488 (3d Cir. 2012) .......................................................................... 5

*DeBrew v. Atwood*,
792 F.3d 118 (D.C. Cir. 2015) ...................................................................... 6, 7

*Demby v. Schweiker,*
    671 F.2d 507 (D.C. Cir. 1981) ...................................................................... 12, 18

*DL v. District of Columbia,*
    450 F. Supp. 2d 11 (D.D.C. 2006) ................................................................ 21, 22

*DL v. District of Columbia,*
    730 F. Supp. 2d 84 (D.D.C. 2010) ...................................................................... 11

*Galvin v. Eli Lilly & Co.,*
    488 F.3d 1026 (D.C. Cir. 2007) ............................................................................ 4

*Georgia v. Pa. Ry. Co.,*
    324 U.S. 439 (1945) ............................................................................................. 12

*Hibbs v. Winn,*
    542 U.S. 88 (2004) ............................................................................................... 14

*Honig v. Doe,*
    484 U.S. 305 (1988) ............................................................................................. 11

*Hunter v. Fed. Energy Regulatory Comm'n,*
    711 F.3d 155 (D.C. Cir. 2013) ............................................................................ 12

*Jasperson v. Fed. Bureau of Prisons,*
    460 F. Supp. 2d 76 (2006) ..................................................................................... 6

*King v. St. Vincent's Hosp.,*
    502 U.S. 215 (1991) ............................................................................................. 13

*Kucana v. Holder,*
    558 U.S. 233 (2010) ............................................................................................... 8

*L.R.L. ex rel. Lomax v. District of Columbia,*
    896 F. Supp. 2d 69 (D.D.C. 2012) ....................................................................... 5

*Mach Mining, LLC v. EEOC,*
    135 S. Ct. 1645 (2015) ........................................................................................... 8

*Maine Sch. Admin. Dist. No. 35 v. Mr. R,*
    321 F.3d 9 (1st Cir. 2003) ...................................................................................... 6

*Milliken v. Bradley,*
    433 U.S. 267 (1977) ............................................................................................... 7

*Morton v. Mancari,*
    417 U.S. 535 (1974) ............................................................................................. 12

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
   297 F.3d 195 (2d Cir. 2002)..................................................................................... 22

*Neshaminy Sch. Dist. v. Karla B*,
   No. CIV. A. 96-3865, 1997 WL 137197 (E.D. Pa. Mar. 20, 1997)........................................... 5

*\*Petit v. United States Dep't of Educ.*,
   578 F. Supp. 2d (D.D.C. 2008) .............................................................................. 6, 8

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
   288 F.3d 478 (2d Cir. 2002)..................................................................................... 22

*Posadas v. Nat'l City Bank*,
   296 U.S. 497 (1936).................................................................................................. 12

*Pueblo of Sandia v. Babbitt*,
   No. 94-2624, 1996 WL 808067 (D.D.C. Dec.10, 1996)........................................................ 6

*Reid ex rel. Reid v. District of Columbia*,
   401 F.3d 516 (D.C. Cir. 2005) .................................................................................... 4

*Russello v. United States*,
   464 U.S. 16 (1983).................................................................................................... 13

*S.S. v. Howard Road Acad.*,
   562 F. Supp. 2d 126 (D.D.C. 2008) ........................................................................ 5, 21

*\*SAI v. Dep't of Homeland Sec.*,
   149 F. Supp. 3d 99 (D.D.C. 2015)........................................................................... 7, 8

*Sea-Land Serv., Inc. v. Alaska R.R.*,
   659 F.2d 243 (1981).................................................................................................. 8

*Smith v. Reilly*,
   604 F. Supp. 2d 124 (D.D.C. 2009) ..................................................................... 11, 17

*\*Trudeau v. Fed. Trade Comm'n*,
   456 F.3d 178 (2006).............................................................................................. 6, 7

*U.S. ex rel. D'Agostino v. Keohane*,
   877 F.2d 1167 (3d Cir. 1989)................................................................................... 17

*United States v. Wong Kim Bo*,
   472 F.2d 720 (5th Cir. 1972) ................................................................................... 13

*Wagner v. Short*,
   63 F. Supp. 2d 672 (D. Md. 1999) ............................................................................. 6

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ......................................................... 4

**Statutes**

18 U.S.C. § 3551 ......................................................................................... 17

18 U.S.C. § 3624 .................................................................................... 14, 17

20 U.S.C. §§ 1400-1482 ...................................................................... passim

28 U.S.C. § 2412 ........................................................................................... 9

29 U.S.C. § 794 .................................................................................... passim

40 U.S.C. § 8722 ......................................................................................... 13

40 U.S.C. §§ 71-74 ..................................................................................... 13

5 U.S.C. § 702 ......................................................................................... 6, 8

D.C. Code § 24:101–24:142 ....................................................... 2, 10, 13, 14

D.C. Code § 38-202 ..................................................................................... 15

D.C. Code § 38–2571 ..................................................................................... 9

*National Capital Revitalization and Self-Government Improvement Act,
   Pub. L. No. 105-33, 111 Stat. 712 (1997) ........................................ passim

**Regulations**

28 C.F.R. § 39 ............................................................................................. 20

34 C.F.R. § 104 ....................................................................................... 9, 20

34 C.F.R. § 300 ............................................................................................. 3

D.C. Mun. Regs. tit. 5-E, § 3002 ......................................................... 11, 15

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... 3

Fed. R. Civ. P. 56 ......................................................................................... 4

**Legislative Materials**

143 Cong. Rec. 17,319 (1997) ................................................................... 15

144 Cong. Rec. 19,821 (Sept. 9, 1998) ........................................................................... 19

**Other Authorities**

Press Release, U.S. Dep't of Justice, Justice Department Announces Reforms at Bureau of
    Prisons to Reduce Recidivism and Promote Inmate Rehabilitation (Nov. 30, 2016) ............. 16

Ryan J. Reilly & Julia Craven, *Federal Bureau of Prisons Fires Head of an Obama-Era
    Education Effort, Putting Reform Under Trump in Doubt*, Huffington Post,
    May 19, 2017 ..................................................................................................................... 16

U.S. Dep't of Justice, *Legal Resource Guide to the Federal Bureau of Prisons* 13 (2014) ......... 17

## INTRODUCTION

Plaintiff Stephon Brown respectfully requests that this Court deny the Motion to Dismiss and for Summary Judgment ("Motion") filed by Defendant Federal Bureau of Prisons ("BOP") ECF No. 16.  BOP's Motion should be denied for two key reasons.  First, BOP does not enjoy the protection of sovereign immunity in this case, despite its argument to the contrary.  Second, Mr. Brown has sufficiently stated claims alleging that BOP was responsible during Mr. Brown's federal incarceration for ensuring his receipt of a free appropriate public education ("FAPE").

For sixteen months—the entirety of Mr. Brown's incarceration in a BOP facility—he lacked access to a high school education and diploma program and the specialized instruction and related services to which he is entitled under both the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.  Mr. Brown's education stalled, and in most areas regressed, resulting in the deprivation of his federally guaranteed civil right to FAPE.

Yet Mr. Brown's federally guaranteed civil right to education does not vanish simply because the District of Columbia ("the District" or "D.C.") incarcerates its residents in BOP facilities nationwide.  The District and BOP cannot conspire to divest Mr. Brown of the right to education guaranteed to all people with disabilities—regardless of their criminal record. Granting this Motion would allow the District and BOP to perpetuate the current No Man's Land of special education, where students with disabilities convicted of felonies under the D.C. Code are sent to BOP facilities only to have their federal civil right to a FAPE disappear.  The law requires more.  Accordingly, this Court should deny BOP's Motion.

# STATEMENT OF FACTS[1]

Mr. Brown is and has always been a resident of the District.  Am. Compl. ¶¶ 5, 19–20, 24, 31.  He remained a District resident during his incarceration at BOP's Federal Correctional Institution Hazelton ("FCI Hazelton") in West Virginia.  *Id.* ¶ 31.  As a student with a Specific Learning Disability, Mr. Brown has been eligible for special education and related services under both the IDEA and Section 504 since elementary school.  *Id.* ¶ 19.

In December 2014, Mr. Brown was arrested for a felony violation of the D.C. Code and detained, pre-trial, in the D.C. Central Detention Facility ("D.C. Jail").  *Id.* ¶¶ 21–22.  While Mr. Brown was incarcerated in D.C. Jail, the District continued to provide him with access to specialized instruction and related services pursuant to his Individualized Education Program ("IEP") under the IDEA and Section 504.  *Id.* ¶ 21.  Mr. Brown was subsequently convicted as an adult under District law and sentenced to a period of incarceration in an adult prison.  *Id.* ¶ 22. Individuals convicted as adults of a felony violation of the D.C. criminal code and sentenced to a term of incarceration serve their sentences in BOP facilities.  *See* D.C. Code § 24-101; Am. Comp. ¶¶ 16–17.  While incarcerated in BOP facilities, these individuals are classified as "D.C. Code Offenders."  Am. Comp. ¶ 14.  There is no adult prison within the District, nor does the District operate its own adult prison.  *Id.* ¶ 16.  Rather, pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), BOP assumes the District's responsibility for the "custody, care, subsistence, education, treatment, and training" of D.C. Code Offenders.  Revitalization Act, § 11201(b), Pub. L. No. 105-33, 111 Stat. 712, 734 (1997); D.C. Code § 24-101 (b).

---

[1] Mr. Brown does not dispute any of the facts set forth in BOP's Statement of Material Facts as to Which There Is No Genuine Issue, ECF No. 16, but contends that BOP is not entitled to summary judgment as a matter of law, for the reasons set forth in this Memorandum.

Mr. Brown entered FCI Hazelton, a BOP facility, in July 2015, where he remained until he completed his sentence in November 2016. Am. Comp. ¶ 22. Upon transferring to FCI Hazelton, Mr. Brown ceased receiving any special education or related services, to which his IEP entitled him. *Id.* ¶ 23. BOP's failure to provide such services, or to arrange for services through the District or a third party, continued even after it received Mr. Brown's IEP. *Id.* By the time Mr. Brown returned to the District in November 2016, he had lost more than an entire school year of academic instruction and special education. *Id.* ¶¶ 24–28.

## PROCEDURAL HISTORY

On September 2, 2016, Mr. Brown filed a Due Process Complaint alleging that he is a student with a disability, as defined by the IDEA, and that he had been denied a FAPE. BOP Statement of Material Facts as to Which There Is No Genuine Issue ¶ 3 ("BOP Statement of Facts"). On September 23, 2016, BOP filed an untimely motion to dismiss Plaintiff's Due Process Complaint. *Id.* ¶ 4; *see* 34 C.F.R. § 300.508(f) (requiring a response to a due process complaint within 10 days of receipt). On October 4, 2016, the hearing officer granted BOP's motion and dismissed BOP as a party respondent to the proceeding. BOP Statement of Facts ¶ 5.

Mr. Brown filed his Complaint on February 27, 2017, ECF No. 1, and an Amended Complaint on April 10, 2017, ECF No. 13. BOP filed its Motion on May 5, 2017. ECF No. 16.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, the Court "accept[s] the well-pleaded factual allegations as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 900 (2016). The court does "not assume the truth of legal conclusions." *Id.* It may "consider materials outside the

pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) (citations omitted), *cert. denied*, 137 S. Ct. 1069 (2017).

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court similarly determines whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *B.R. ex rel. Rempson v. District of Columbia*, 524 F. Supp. 2d 35, 39 (D.D.C. 2007).  The Court may also "consider . . . documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citation omitted).

"Summary judgment is appropriate only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"  *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1031 (D.C. Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).  The Court "view[s] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in its favor."  *Id.* (citation omitted).

In dismissing Mr. Brown's administrative complaint against BOP, the hearing officer accepted all of Mr. Brown's factual allegations as true and determined as a matter of statutory interpretation that it did not have jurisdiction over BOP.  BOP Mem. Ex. A, Hearing Officer Decision 3–7 (Oct. 4, 2016).  Whether an IDEA hearing officer's statutory construction is correct is "a pure question of law that courts review de novo."  *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005).

## ARGUMENT

### I.     The Court Has Jurisdiction Over Mr. Brown's Suit.

Shunting aside Mr. Brown's claim for compensatory education as moot and ignoring his claims for declaratory relief and attorneys' fees, BOP contends that sovereign immunity deprives this Court of jurisdiction.  BOP Mem. 1 n.1, 7–9.  Because Mr. Brown's compensatory education claim is not moot, and BOP is not immune from suit for nonmonetary remedies and attorneys' fees in this case, this Court has jurisdiction and should deny BOP's Motion.

#### A.     Mr. Brown's Claim for Compensatory Education Is Not Moot.

BOP does not argue that it is immune from Mr. Brown's claims for compensatory education, only that those claims are moot because Mr. Brown is no longer in BOP custody. BOP Mem. 1 n.1.  But requests for compensatory education remain viable even after students leave a defendant's jurisdiction or become ineligible for special education services entirely.  As this Court has observed, the IDEA does not force students to choose between sticking with an unacceptable placement in the hopes of one day receiving compensatory education or moving districts and relinquishing that right.  *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 82 (D.D.C. 2012).  Students who leave one district may still "seek to . . . redress their alleged injury which arose when the school district allegedly violated the child's right to a FAPE at a time when the school district was required under the law to provide the child with a FAPE." *Id.* at 83 (alterations omitted) (quoting *Neshaminy Sch. Dist. v. Karla B*, No. CIV. A. 96-3865, 1997 WL 137197, at *6 (E.D. Pa. Mar. 20, 1997)); *see D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 496–99 (3d Cir. 2012) (holding that moving to a new school district during the course of litigation does not moot a claim for compensatory education); *S.S. v. Howard Road Acad.*, 562 F. Supp. 2d 126, 130 (D.D.C. 2008) (holding that a student's receipt of special education services full time in a private school did not moot the student's compensatory

education claim against his previous school).  Claims for compensatory education survive even when the student ages out of eligibility for IDEA services.  *Maine Sch. Admin. Dist. No. 35 v. Mr. R*, 321 F.3d 9, 18 (1st Cir. 2003); *Wagner v. Short*, 63 F. Supp. 2d 672, 676 (D. Md. 1999).  To accept BOP's argument would render federal special education law toothless in cases where education agencies forced students out of their districts or delayed appropriate action until the child aged out.  That is not what the law requires.

> **B.**     **BOP Is Not Immune from Suit.**

>> 1.     *BOP Is Not Immune from Mr. Brown's Claims for Nonmonetary Relief.*

Because the Administrative Procedure Act ("APA") waives the United States' immunity from suit for nonmonetary relief, BOP is not immune from Mr. Brown's claims for compensatory education and a declaratory judgment.[2]  Under the APA, a person who "suffer[s] a legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action" may bring suit against the United States "seeking relief other than money damages."  5 U.S.C. § 702.  This Circuit has "previously, and repeatedly" held that "[t]he 'APA's waiver of sovereign immunity applies to any suit whether under the APA or not.'"  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (2006) (quoting *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996)); *accord DeBrew v. Atwood*, 792 F.3d 118, 124–25 (D.C. Cir. 2015).  And, as this Court recognized in *Petit v. United States Department of Education*, the APA waiver applies to suits against the federal government under the IDEA.  578 F. Supp. 2d 145, 152–53 (D.D.C. 2008) ("[T]he defendants provide no support for their proposition that, by making the states responsible for upholding the IDEA, Congress intended to foreclose IDEA suits against the

---

[2] To the extent BOP suggests that Mr. Brown was required to cite the APA in the jurisdiction section of his Complaint, *see* BOP Mem. 8, that is incorrect.  *See Jasperson v. Fed. Bureau of Prisons*, 460 F. Supp. 2d 76, 85 (2006); *Pueblo of Sandia v. Babbitt*, No. 94-2624, 1996 WL 808067, at *9 (D.D.C. Dec.10, 1996).

federal government."). This conclusion applies with even greater force to Section 504 of the Rehabilitation Act, which explicitly applies to federally-conducted programs regardless of whether they receive IDEA funding. 29 U.S.C. § 794; *see SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 112–13 (D.D.C. 2015) ("[N]o court has questioned that claims for nonmonetary relief seeking to enforce Section 504's ban on discrimination in federal programs are actionable.").

The relief Mr. Brown seeks against BOP is available under the APA waiver. A declaratory judgment is not "money damages." *Trudeau*, 456 F.3d at 186.[3] Neither is compensatory education, which is not "a sum of money." *See Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (citation omitted). And, as the case of *Milliken v. Bradley*, 433 U.S. 267 (1977), illustrates, compensatory educational services are the kind of relief that traditionally has been allowed in suits against otherwise immune government actors. In *Milliken*, the Supreme Court rejected Michigan's sovereign immunity challenge to an order forcing it to pay for remedial education (including, among other things, a remedial reading program) to combat the effects of *de jure* segregation on African-American students. The Court reaffirmed that such remedies "fit[] squarely within the prospective-compliance exception" to sovereign immunity and are not equivalent to the money damages that are not available in suits against states. *Id.* at 289. Reflecting on the fact that Michigan's segregated school system had "caused significant deficiencies in communications skills [such as] reading and speaking," that its "victims will continue to experience . . . until such future time as the remedial programs can help dissipate the continuing effects of past misconduct," the Court declared, "[t]hat the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates

---

[3] The fact that Mr. Brown seeks compensatory damages against another defendant does not eliminate the Court's jurisdiction over BOP. *DeBrew*, 792 F.3d at 125.

prospectively to bring about the delayed benefits of a unitary school system." *Id.* at 290. Similarly, in this case BOP's failure to provide Mr. Brown a FAPE has worked considerable damage on his educational progress which cannot be immediately remedied, regardless of the characterization of the relief as "compensatory." The relief Mr. Brown seeks would operate prospectively to bring about the educational benefits BOP has delayed. As in *Milliken*, the government remains responsible for compensatory services.

While there is an exception to the APA waiver of sovereign immunity when "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702, the exception is narrow and does not apply in this case. *See Clark v. Library of Cong.*, 750 F.2d 89, 102 (1984) (stating that the APA waiver "eliminated the sovereign immunity defense in *virtually all* actions for non-monetary relief against a U.S. agency or officer acting in an official capacity." (emphasis added)); *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (1981) ("The legislative history plainly reveals a congressional intent to strengthen Government accountability and dispel the confusion, uncertainty, and unfairness sovereign immunity defenses generated."). "Congress rarely intends to prevent courts from enforcing its directives to federal agencies. For that reason, this Court applies a 'strong presumption' favoring judicial review of administrative action," *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)), a presumption that can be dislodged only by "clear and convincing evidence," *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (citation omitted). As *Petit* and *SAI* indicate, there is no such evidence to exempt the IDEA or Section 504 from the reach of the APA.

2.    *Attorneys' Fees and Expenses Are Available Against BOP under the Equal Access to Justice Act.*

In addition, Mr. Brown is entitled to seek attorneys' fees and expenses from BOP under the Equal Access to Justice Act, which provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.  The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).  Attorneys' fees and expenses are available to the prevailing party in a suit under the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i),[4] and under Section 504, 29 U.S.C. § 794a(b). Because this Court has jurisdiction over Mr. Brown's IDEA and Section 504 claims for declaratory relief and compensatory education against BOP, BOP is liable for Mr. Brown's attorneys' fees to the same extent as any other defendant would be.

## II.    Under the IDEA and Section 504, Applied to BOP Through the Revitalization Act, BOP Was Obligated to Provide Mr. Brown with a FAPE While Mr. Brown Was in BOP Custody.

Both the IDEA and Section 504 require covered entities to provide FAPE.  20 U.S.C. § 1412; 34 C.F.R. § 104.33(a) ("A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.").

---

[4] This provision entitles "a prevailing party who is the parent of a child with a disability" to attorneys' fees. 20 U.S.C. § 1415(i)(3)(B)(i).  The IDEA allows states to elect for IDEA rights to transfer from parents to their children after a child reaches the age of majority.  *Id.* § 1415(m). The District Code contains such a provision.  D.C. Code § 38–2571.04.

BOP's argument that neither the IDEA, nor Section 504, nor the Revitalization Act require it to provide special education services to individuals convicted under District law ignores the interaction between the statutes and would result in consequences contrary to legislative intent.  Through the Revitalization Act, BOP "assum[ed] . . . responsibility for persons convicted of a felony offense under the District of Columbia Code."  Revitalization Act, Pub. L. No. 105-33, § 11202(a)(1), 111 Stat. 712, 737 (1997); D.C. Code § 24-102 (a)(1).  BOP is required to assign D.C. Code Offenders "to a penal or correctional facility operated or contracted for by the Bureau of Prisons," where "the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment and training of such persons."  Revitalization Act § 11201(a)-(b), 111 Stat at 734; D.C. Code § 24-101(a)–(b).  BOP reads the Act's education mandate to require it to supply only the same educational services it must provide individuals convicted under federal law.  BOP Mem. 14–15.  These educational services do not include special education for incarcerated students with disabilities.  BOP's reading of the Act abandons these vulnerable students in a Special Education No Man's Land.  The law requires more.  Rather than being the "natural reading" of the Revitalization Act, *id.* at 14, BOP's interpretation would: 1) work an implicit repeal of other federal rights, 2) contradict Congress's approach to related provisions of the Revitalization Act, and 3) render statutory language superfluous.

A.     **The Revitalization Act Should Not Be Read to Impliedly Repeal Federal Special Education Law.**

BOP's interpretation of the Revitalization Act is insupportable because it reads other federal law out of existence by working an implicit repeal of the IDEA and Section 504.  BOP does not contest that the IDEA and Section 504 apply to District residents up through the semester in which they turn age 22, who, like Mr. Brown, had IEPs in place at the time they were incarcerated under state law, *see* 20 U.S.C. § 1412(a)(1)(B), (a)(11)(C) (applying the IDEA to

incarcerated individuals); D.C. Mun. Regs. tit. 5-E, § 3002.1(b); Am. Compl. ¶¶ 19, 30, and that

the IDEA accords eligible students "independent, enforceable rights," *DL v. District of

Columbia*, 730 F. Supp. 2d 84, 91 (D.D.C. 2010); *see also Honig v. Doe*, 484 U.S. 305, 310

(1988) ("Congress did not content itself with passage of a simple funding statute.  Rather, the

[Education of the Handicapped Act, the predecessor to the IDEA] confers upon disabled students

an enforceable substantive right to public education in participating States.").

      Moreover, the IDEA contemplates that students retain these rights even when they are

incarcerated in *federal* facilities.  20 U.S.C. § 1415(m)(1)(D) (allowing that "all rights accorded

to parents under this subchapter transfer to children who are incarcerated in an adult or juvenile

Federal, State, or local correctional institution").  The letter from Department of Education upon

which both BOP and the District rely, *see* BOP Mem. 6; D.C. Mem. 4–5, ECF No. 14, notes only

that the IDEA "makes no specific provision for funding educational services for individuals with

disabilities through the BOP."  BOP Mem. Ex. B, Letter from Stephanie Smith Lee, U.S. Dep't

of Educ., to Geoffrey A. Yudien, Vt. Dep't of Educ. 2 (Aug. 19, 2003).  However, it never

addresses this provision of the IDEA, which contemplates that students nevertheless retain their

IDEA rights when incarcerated in federal prison, even if the prison is outside the jurisdiction of

their residence.  Accepting BOP's interpretation of the Revitalization Act would mean that

Congress silently abrogated federal special education rights, both by allowing BOP to ignore the

IEPs of students like Mr. Brown and by allowing BOP to refuse to cooperate with any attempt by

the District of Columbia to provide required special education services.  Reading such a repeal

into the Revitalization Act violates cardinal principles of statutory interpretation.

      Where the plain text of a statute does not reveal Congress's intent to repeal prior law,

courts will find an implied repeal in only rare circumstances, where "an intent to repeal . . . is

*clear and manifest*," *Hunter v. Fed. Energy Regulatory Comm'n*, 711 F.3d 155, 159 (D.C. Cir.

2013) (alteration and emphasis in original) (quoting *Agri Processor Co. v. NLRB*, 514 F.3d 1, 4

(D.C. Cir. 2008)), or where there is "a clear repugnancy between the old . . . and the new,"

*Demby v. Schweiker*, 671 F.2d 507, 510 (D.C. Cir. 1981) (alteration in original) (quoting

*Georgia v. Pa. Ry. Co.*, 324 U.S. 439, 456 (1945)).  No such intent is manifest from either the

text or the legislative history of the Revitalization Act, both of which are silent as to the IDEA

specifically.  Nor are any of the requirements of the Revitalization Act in "irreconcilable

conflict" with the obligations imposed by the IDEA and Section 504.  *Hunter*, 711 F.3d at 160

(quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)).  The Revitalization Act does not

prohibit BOP from ensuring a FAPE to eligible District student inmates or from cooperating with

the District to provide one, or make either option impossible.  Yet, by reading the Revitalization

Act to require nothing more from BOP than that which it owes persons sentenced under federal

law, the Court would allow BOP to deny people with special education rights a FAPE and to

obstruct the District in fulfilling its own duties under the IDEA and Section 504, obliterating the

IDEA and Section 504 for D.C. Code Offenders.  That it may not do.  "The courts are not at

liberty to pick and choose among congressional enactments, and when two statutes are capable

of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to

the contrary, to regard each as effective."  *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

### B.   Congress Legislated Specifically When It Intended to Repeal Other Federal and District Law via the Revitalization Act.

Rather than assuming that all of the federal and state law regarding the District's criminal

justice operations vanished when D.C. Code Offenders were moved to federal facilities,

Congress delineated where it intended to abrogate governing federal or District law.  Thus, in the

same section of the Revitalization Act turning custody of D.C. Code Offenders over to BOP,

Congress specified that BOP would not be bound by the National Capital Planning Act of 1952,

40 U.S.C. 71 *et seq.*  Revitalization Act § 11201(e), 111 Stat. at 735; D.C. Code § 24-101 (e).[5]  It

also determined that the Pretrial Services, Defense Services, Parole, Adult Probation, and

Offender Supervision Trustee, who was charged with reorganizing and transitioning those

functions to the federal government, would not be bound by federal law governing civil service

appointments and pay.  Revitalization Act § 11232(c), 111 Stat. at 746-747; D.C. Code § 24-132

(c).  Congress also explicitly legislated the override of certain District laws, including District

sentencing laws, Revitalization Act §§ 11212(b), 11214, 111 Stat. at 741, 744-45; D.C. Code §§

24-112 (b), 24–114;[6] parole laws, Revitalization Act § 11231(a)(1), (c), 111 Stat. at 745; D.C.

Code § 24-131 (a)(1), (c); and laws governing appointments, salaries, and procurement in some

circumstances, Revitalization Act § 11232(c), (d), 111 Stat. at 746–47; D.C. Code § 24-132(c),

(d).

It is a "cardinal rule that a statute is to be read as a whole," *Corley v. United States*, 556

U.S. 315 n.5 (2009) (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)), and "where

Congress includes particular language in one section of a statute but omits it in another section of

the same Act, it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion," *Russello v. United States*, 464 U.S. 16, 23 (1983) (alteration

omitted) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).  Here,

where the federal government assumed District responsibilities, and Congress intended to relieve

---

[5] This relieved BOP of the burden, among other things, of the obligation to coordinate
construction plans in the District with the National Capital Planning Commission.
*See* 40 U.S.C. § 8722(b)(1).
[6] Notably, Congress did not require the District to adopt capital punishment, Revitalization Act §
11212(c), 111 Stat. at 742; D.C. Code § 24-112(c), another indication that Congress did not
intend to bring D.C. Code Offenders under the exclusive control of the law applied to persons
convicted of federal crimes.

the federal government of obligations otherwise imposed on the District, it said so.  But the Revitalization Act nowhere relieves BOP of the District's obligations under the IDEA or Section 504.

### C.     BOP's Reading of the Revitalization Act Renders Statutory Language Superfluous.

BOP's interpretation of the Revitalization Act to subject D.C. Code Offenders' rights to BOP's obligations to federal offenders is "at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"  *Corley*, 556 U.S. at 314 (alteration in original) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).  The Revitalization Act contains two provisions that are relevant here.  The first requires that D.C. Code Offenders "be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed."  Revitalization Act § 11201(a)-(b), 111 Stat. at 734; D.C. Code § 24-101 (a)–(b).  The second requires that "the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment and training of such persons."  Revitalization Act § 11201(b), 111 Stat at 734; D.C. Code § 24-101(b).  If possible, both clauses must be read to have independent effect.  Under the first clause, BOP is required to provide General Educational Development ("GED"), literacy, and English language programming, requirements on the books at the time the Revitalization Act was enacted in 1997.  *See* Crime Control Act of 1990, § 2904, Pub. L. No. 101–647, 104 Stat. 4789, 4913–14 (1990) (codified as amended at 18 U.S.C. § 3624(b)(3), (f)).  But Congress also imposed the additional mandate that BOP "be responsible for the . . . education . . . of [D.C. Code Offenders]."  If the programs already required of BOP when it did not house D.C. Code Offenders were all that Congress intended to

14

require of BOP after it housed D.C. Code Offenders, the Revitalization Act's transfer of responsibility for "education" of D.C. Code Offenders would be superfluous.

The more logical reading is that the laws and regulations applicable to all federal prisoners supply minimum requirements, while the additional laws applicable to D.C. Code Offenders create additional obligations. As one of the principal architects of the Revitalization Act stated, "[i]ts essential elements include Federal assumption of some government functions normally performed by state governments." 143 Cong. Rec. 17,319 (1997) (statement of Rep. Thomas M. Davis).[7] It follows that where it assumed state government functions, BOP also assumed the District's state duties to its citizens—in this case, the duty to provide a FAPE.

BOP catastrophizes this interpretation, asserting that it would require it to accept every educational obligation under District law. BOP Mem. 14 ("There is no basis to distinguish between the District of Columbia's IDEA obligations and all of its other education obligations, of which there are many. *See* Title 38 of the D.C. Code."). But Mr. Brown does not contend that people convicted under District law retain "unfettered rights" as free persons under the D.C. Code when they are incarcerated. *See id.* Rather, Mr. Brown contends that BOP assumed the educational obligations that the District owes to *people convicted of felonies* under D.C. law—a more limited set of responsibilities. And, as only people convicted of District felonies *as adults* are placed in BOP custody, these responsibilities are owed to a limited number of people.[8]

---

[7] Representative Davis was the chairman of the House D.C. Subcommittee at the time the Revitalization Act was enacted.

[8] As BOP notes, D.C. Code Offenders make up only "a small subset of its prison population." BOP Mem. 15. An even smaller number are under age 18, the age at which District residents are no longer subject to the state's compulsory education requirements (although they remain entitled to IDEA services until age 22). D.C. Code § 38-202; D.C. Mun. Regs. tit. 5-E, § 3002.1(b).

Nor is BOP incapable of providing robust educational services—in fact, in November 2016, the Department of Justice announced that it was "building a semi-autonomous school district within the federal prison system, which will offer programs for literacy, high school diplomas and post-secondary education, along with expanded opportunities for individuals with learning disabilities."  Press Release, U.S. Dep't of Justice, Justice Department Announces Reforms at Bureau of Prisons to Reduce Recidivism and Promote Inmate Rehabilitation (Nov. 30, 2016), *available at* https://www.justice.gov/opa/pr/justice-department-announces-reforms-bureau-prisons-reduce-recidivism-and-promote-inmate.  Thus, not only *can* BOP offer the services Mr. Brown and other D.C. Code Offenders are entitled to, but it has said that it would do so for all federal inmates, regardless of their legal entitlement.[9]

### D.   Interpreting the Revitalization Act to Impose Special Education Obligations on BOP Does Not Produce "Absurd" Results.

BOP's assertion that requiring it to provide services under the IDEA "would create absurd results" does not withstand scrutiny.  *See* BOP Mem. 15.  BOP argues that it cannot be expected to treat "a small subset of its prison population" differently than others, *id.*, but it does not explain why.  In fact, BOP already follows different rules with regard to D.C. Code Offenders.  For example, while people convicted under federal law cannot earn good-time credits for time spent on pretrial release, D.C. Code Offenders may earn such credit.  U.S. Dep't of

---

[9] Unfortunately, Mr. Brown, whose incarceration has ended, will not benefit from this program if it is carried out.  In addition, there are some indications that the change of federal administration has resulted in a change in BOP's education plans, as the website created for the initiative has now been archived, https://www.justice.gov/archives/prison-reform, and the individual hired to lead the initiative has reportedly been fired.  Ryan J. Reilly & Julia Craven, *Federal Bureau of Prisons Fires Head of an Obama-Era Education Effort, Putting Reform Under Trump in Doubt*, Huffington Post, May 19, 2017, http://www.huffingtonpost.com/entry/bureau-of-prisons-education-reform_us_591f2289e4b094cdba53c398.  Nevertheless, a potential policy change does not alter BOP's capacity to ensure the special education rights of people like Mr. Brown are respected.

Justice, *Legal Resource Guide to the Federal Bureau of Prisons* 13 (2014), *available at* https://www.bop.gov/resources/pdfs/legal_guide.pdf.  Under a separate policy BOP maintains regarding D.C. Code Offenders convicted under the District of Columbia Youth Rehabilitation Act ("DCYRA"), BOP staff must, among other things, provide extra support to help these individuals to establish and fulfill "meaningful Progress Report goals," update the U.S. Parole Commission with progress reports, and attend parole hearings.  Ex. A, U.S. Dep't of Justice, CPD/CPB No. 5215.06, *District of Columbia Youth Rehabilitation Act (DCYRA) Offenders* 2, 4 (Oct. 11, 2011).  In fact, the DCYRA program statement sets forth distinct policies for two subgroups, people convicted before and after the D.C. Sentencing Reform Amendment Act of 2000.  *Id.* at 1–2.  The law and policy governing the supervised release/parole of D.C. Code Offenders is different than that governing federal offenders who were sentenced before 1987, and both are distinct from federal offenders sentenced after 1987, who are not eligible for parole at all.  *See* 18 U.S.C. § 3551 (a) (abolishing parole for federal offenders unless they are convicted by "an Act of Congress applicable exclusively in the District of Columbia"); *Smith v. Reilly*, 604 F. Supp. 2d 124, 127–28 (D.D.C. 2009) (explaining that Congress enacted the Revitalization Act to authorize the United States Parole Commission to grant, deny, revoke, or modify conditions of parole for District of Columbia Code felony offenders);*U.S. ex rel. D'Agostino v. Keohane*, 877 F.2d 1167, 1169 (3d Cir. 1989) ("It is well settled that the Sentencing Reform Act abolished the United States Parole Commission and repealed the federal parole statutes.").

There are many more groups to whom different sets of rights, privileges, programs, and policies apply in the federal prison system, including, for example, people eligible for GED or English language classes.  18 U.S.C. § 3624(b)(3), (f).  BOP cites no authority supporting its

position that requiring it to provide special education services to "a small subset" of inmates is any more absurd than the separate policies and programs it already administers.

Nor is it absurd to require BOP to provide special education services simply because it does not directly receive funds earmarked for such services from the Department of Education. *See* BOP Mem. 16.  Mr. Brown does not contend that BOP alone is responsible for providing eligible students with a FAPE, but that this responsibility is shared with the District, which does accept IDEA funds.  To release BOP from its obligation to cooperate with the District in the provision of IDEA services would not save it from an unfunded mandate, but it would prevent students like Mr. Brown from enforcing their rights, placing them in a Special Education No Man's Land.  And, even if there were no funds available to cover the services Mr. Brown seeks, as this circuit has acknowledged, "it will be a rare day indeed on which a court may infer the repeal of a substantive statute even from an actual decision by the full Congress to fund, or not to fund, a particular program."  *Demby*, 671 F.2d at 511.

Far from wreaking absurd results, Mr. Brown's interpretation of the interaction between the IDEA and Section 504 and the Revitalization Act ensures the realization of congressional intent.  The IDEA envisions that "*all* children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A) (emphasis added).  Congress included incarcerated individuals in the class of eligible students—including individuals incarcerated in federal prison—and circumscribed the limitations that may be placed on their eligibility.  *See id.* §§ 1412(a)(11)(C), 1412(a)(1)(B), 1415(m)(1)(D).  Moreover, Congress envisioned a significant role for the federal government in fulfilling the IDEA's goals.  *Id.* § 1400(c)(6) ("[I]t is in the

national interest that the Federal Government have a supporting role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law."); *id.* § 1400(c)(7) ("A more equitable allocation of resources is essential for the Federal Government to meet its responsibility to provide an equal educational opportunity for all individuals."); *id.* § 1400(c)(10)(A) ("The Federal Government must be responsive to the growing needs of an increasingly diverse society.").

As for the Revitalization Act, it was intended to better the conditions for District inmates, not decrease their services.  Thus, the Revitalization Act and follow-up bills closed the District's adult prison at Lorton because "with chronic overcrowding, inmate idleness, widespread drug use, *inadequate education* and training programs and increasing violence," it had "become a 'finishing school' for criminals."  *See* 144 Cong. Rec. 19,821 (Sept. 9, 1998) (statement of Rep. Frank R. Wolf) (emphasis added).  Congress envisioned that "[w]ith the closure of Lorton, inmates will be distributed to sites around the state that offer more opportunities such as training and education."  *Id.*

Given these congressional goals, it would be perverse to read the Revitalization Act to strip special education services from the very residents it was designed to assist, and to absolve the federal government of responsibility for ensuring that the IDEA and Section 504 are fully enforced.  *See Bitsilly ex rel. Denet-Yazzie v. Bureau of Indian Affairs*, 253 F. Supp. 2d 1257, 1267 (D.N.M. 2003) ("Defendants' interpretation of the TCSA [Tribally Controlled Schools Act] as setting its responsibilities at nil when a school is tribally controlled is unreasonable and manifestly contrary to both the IDEA and the TCSA.  It creates the absurd result of providing fewer protections for Indian disabled children than for non-Indian disabled children.").

19

**III.    The Revitalization Act Required BOP to Fulfill the District's Obligations under Section 504, Including Providing Mr. Brown with a FAPE While in BOP Custody.**

**A.    By Failing to Provide a FAPE, BOP Violated Its Section 504 Obligations.**

BOP argues that its failure to provide a FAPE is unrelated to the Section 504 obligations it accepted under the Revitalization Act, because refusing a FAPE is not discrimination "solely" on the basis of disability.  BOP Mem. 17.  That argument simply ignores that Section 504 obliges the District to provide a FAPE, 34 C.F.R. § 104.33(a), and therefore similarly obliges an entity like BOP that has assumed the District's responsibilities.[10]  As Mr. Brown explained in his Opposition to the District of Columbia's Motion to Dismiss, this obligation arises from Section 504's disparate impact provision: without a FAPE, students with disabilities will be disparately impacted and denied the opportunity to benefit meaningfully from their education "solely by reason of" their disabilities.  29 U.S.C. § 794 (a); *see* Pl.'s Mem. Opp. D.C.'s Mot. Dismiss 15–16, ECF No. 19.

Moreover, accepting BOP's argument would allow it to abet the District in shirking its responsibilities to individuals with disabilities who are eligible for Section 504 educational plans.  As recognized by both the Department of Justice regulations that apply directly to BOP, and the Department of Education regulations that govern the District, entities with Section 504 obligations may not, "directly or through contractual, licensing, or other arrangements," relieve themselves of their responsibility to ensure equal access to people with disabilities.  28 C.F.R. § 39.130(b)(1), (3); 34 C.F.R. § 104.4(b)(1), (4).  Yet, that is just what the District and BOP have purported to do here, stranding Mr. Brown in a Special Education No Man's Land in which the

---

[10] BOP notes that a claim based on the denial of a FAPE under Section 504 must allege facts showing bad faith or gross misjudgment, but BOP does not argue that Mr. Brown has failed to allege such facts.  BOP Mem. 16–17.  To the extent BOP does raise that argument, Mr. Brown relies on his Opposition to the District of Columbia's Motion to Dismiss at pages 17–18, ECF No. 19.

rights possessed by citizens of every other state convicted of state crimes are no longer his.  BOP

has provided no authority suggesting that Congress intended such a consequence from the

Revitalization Act, and the Court should reject this irrational result.

**B.      Mr. Brown's Section 504 Claims Are Not Barred by Failure to Exhaust.**

1.      *Mr. Brown Has Exhausted His Section 504 Claim.*

Mr. Brown exhausted his claims against BOP by filing an Administrative Due Process

Complaint naming BOP and raising the same allegations he raises here, that BOP's actions

resulted in the total denial of a FAPE.  Am. Compl. ¶¶ 8, 10, 12, 32, 45; BOP Mem. Ex. A,

Hearing Officer Decision 1, 3 (Oct. 4, 2016).[11]  In doing so, Mr. Brown fulfilled the twin

purposes of the exhaustion requirement: making a record that will aid the court in its

deliberations, and "providing a means whereby official abuse can be corrected without resort to

lengthy and costly trial."  *DL v. District of Columbia*, 450 F. Supp. 2d 11, 17 (D.D.C. 2006)

(quoting *Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989)).

BOP's exhaustion argument appears to mistakenly assume that to administratively

exhaust his Section 504 claim, Mr. Brown was required to cite Section 504 to the hearing officer.

*See* BOP Mem. 17.[12]  That is not the case.  This Court has held that failure to exhaust IDEA

remedies bars a plaintiff's suit under Section 504 where "the allegations underlying

Plaintiff's . . . Section 504 claim are separate and distinct from the allegations that were

exhausted during the administrative proceedings."  *S.S. ex rel. Street v. District of Columbia*, 71

---

[11] The IDEA provides, "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under . . . title V of the Rehabilitation Act of 1973 . . . except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter," plaintiffs must exhaust their claims "to the same extent as would be required had the action been brought under this subchapter."  20 U.S.C. § 1415(*l*).

[12] BOP also relies on Section 501 cases, a provision of the Rehabilitation Act that does not apply here.  BOP Mem. 17.

F. Supp. 3d 1, 6 (D.D.C. 2014).  Mr. Brown was required only to "raise the *allegations* related to [his] Section 504 claim in an IDEA complaint submitted to an IDEA hearing officer."  *Id.* (emphasis in original).  This is not a case where Mr. Brown has attempted to "evade" exhaustion or deprive the Court or the defendants of the benefit of the administrative process.  *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002).  BOP and the District have been given a full opportunity to "exercise . . . [their] discretion and educational expertise, explor[e] . . . technical educational issues, . . . develop[] . . . a complete factual record, and . . . correct shortcomings in their educational programs for disabled children."  *Id.* (citation omitted).  Further exhaustion is not required.

2.    *In the Alternative, Mr. Brown Was Not Required to Exhaust His Section 504 Claim Because Exhaustion Would Have Been Futile.*

While Mr. Brown did appropriately exhaust his Section 504 claim, he was not required to, because exhaustion in this case was, from the beginning, futile.  "In determining whether exhaustion of administrative remedies would be futile, courts look to whether the purposes of the pertinent administrative scheme would be furthered by requiring exhaustion in the particular case."  *DL*, 450 F. Supp. 2d at 17.

> Exhaustion is excused on grounds of futility or inadequacy of administrative remedies in three circumstances: "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."

*Id.* (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)).  Here, similarly to *DL*, BOP has adopted a policy or pursued a general practice that contravenes the law.  In *DL*, this Court held that exhaustion was futile because "plaintiffs claim that defendants have a policy, pattern, and practice of failing to provide" eligible students "in the District of Columbia with a FAPE because of their systemic failure to comply with" federal law.

22

*Id.* at 18.  In this case, Mr. Brown alleges that BOP, as a policy, *never* supplies D.C. Code

Offenders with IDEA services, and that this policy violates federal law.  Am. Compl. ¶ 18.

Moreover, BOP has not, and cannot allege that further administrative process would have

benefited it or the reviewing court—the administrative scheme was allowed to unfold.  *See supra*

Part IV.B.1.  The futility of exhaustion of Mr. Brown's Section 504 claims is further

demonstrated by the Hearing Officer's dismissal of Mr. Brown's identical IDEA claims against

BOP.  BOP Mem. Ex. A, Hearing Officer Decision 7 (Oct. 4, 2016) ("I conclude that I do not

have jurisdiction over the BOP under the IDEA or any other law identified by Petitioner.").

There is therefore no need for Mr. Brown to further exhaust his Section 504 claim.

## CONCLUSION

For the foregoing reasons, BOP's Motion to Dismiss and for Summary Judgment should

be denied.

Respectfully submitted,

_____
/s/

Sarah Comeau (Bar No. 1012980)
SCHOOL JUSTICE PROJECT
1805 7th Street NW, 7th Floor
Washington, DC 20001
Tel:  (202) 494-5388
Fax:  (202) 204-5838
scomeau@sjpdc.org

Jessica P. Weber (Bar No. MD17893)
Abigail Graber (*pro hac vice motion
pending*)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street
Suite 1700
Baltimore, Maryland 21202
Tel:  (410) 962-1030
Fax:  (410) 385-0869
jweber@browngold.com
agraber@browngold.com

Kobie Flowers (Bar No. 991403)
BROWN GOLDSTEIN & LEVY, LLP
1717 K Street, NW
Suite 900
Washington, DC 20006
Tel: (202) 742-5969
Fax: (202) 742-5948
kflowers@browngold.com

Dated:  June 2, 2017                    *Counsel for Plaintiff Stephon Brown*