# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| STEPHON BROWN<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. |

Civil Action No. 17-348 (RDM)

## MEMORANDUM OPINION AND ORDER

This case raises a novel issue of statutory interpretation: Whether the National Capital Revitalization and Self Government Improvement Act of 1997, Pub. L. No. 105–33, § 11201, 111 Stat. 251, 734 (1997) (codified at D.C. Code § 24-101) [hereinafter "Revitalization Act"]—which commits the "felon population sentenced pursuant to the [D.C.] Official code" to "the custody, care, subsistence, education, treatment and training" of the federal Bureau of Prisons, *id.* § 11202(b)—impliedly repeals the District of Columbia's obligations to provide a free appropriate public education ("FAPE") to those individuals, as required by the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Plaintiff Stephon Brown was convicted of a felony under the D.C. Code and incarcerated, pursuant to the Revitalization Act, in a federal correctional facility for sixteen months. During that time, both the federal Bureau of Prisons ("BOP") and the District of Columbia (the "District") denied responsibility for providing him a FAPE. Plaintiff brought suit against the BOP and the District after his release, alleging that their actions violated the IDEA and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.

The Court referred this matter to Magistrate Judge G. Michael Harvey for a report and recommendation. Minute Order (Mar. 6, 2017). Both Defendants then moved to dismiss the

case.[1]  Dkt. 14; Dkt. 16.  Presently before the Court is Magistrate Judge Harvey's Report and Recommendation ("R&R") granting the "BOP's motion in its entirety and granting in part and denying in part the District's motion."  Dkt. 25 at 2.  Plaintiff and the District both filed (1) timely objections to Magistrate Judge Harvey's R&R, *see* Dkt. 26; Dkt. 27; (2) responses to each other's objections, *see* Dkt. 29; Dkt. 31; and (3) replies thereto, *see* Dkt. 32; Dkt. 33.  The BOP also filed a response to the District's objections.  *See* Dkt. 30 at 1 (responding to the District's claim that "the Federal government was responsible for Mr. Brown's education while he was in their custody").

Upon consideration of the above submissions, the Court **ADOPTS** in part and **MODIFIES** in part Magistrate Judge Harvey's thoughtful and thorough R&R.  For the reasons set forth below, the Court agrees with the Magistrate Judge's recommended disposition of the case and writes separately to explain where the Court's analysis diverges from the R&R's reasoning.  Accordingly, the BOP's motion to dismiss is **GRANTED** in its entirety, and the District's motion to dismiss is **GRANTED** in part and **DENIED** in part.

---

[1]  BOP filed a "motion to dismiss *and for summary judgment*."  Dkt. 16 (emphasis added).  The R&R, however, declined to analyze Plaintiff's claims under the summary judgment standard because "the body of [BOP's] memorandum" only set forth "the legal standards [for a motion to dismiss]," and, in any case, "[w]hen no additional evidence is introduced . . . , a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record."  Dkt. 25 at 9 n.2 (quoting *Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006)).  Given that the BOP raised no objection to the R&R, the Court will adopt the R&R's approach and hereinafter refer to, and consider, the BOP's motion as a motion to dismiss.

# I. BACKGROUND

## A. Factual Background

The relevant facts underlying Plaintiff's IDEA and Rehabilitation Act claims are recounted in greater detail in the "Background" section of the R&R. *See id.* at 2–9.[2] In short, Plaintiff, a "lifelong resident" of the District, has been "eligible for special education and related services" since elementary school. Dkt. 25 at 5. In December 2014, when Plaintiff was eighteen, he was "arrested for a felony violation of the [D.C.] Code" and "sentenced to twenty-four months' incarceration on the local charge," which he served, pursuant to the Revitalization Act, at the "Hazelton Federal Correction Institution" in West Virginia. *Id.* Critical to this case, "Plaintiff never received any special education services, nor was he enrolled in any high school program during his incarceration." *Id.*

In September 2016, two months prior to his release, "Plaintiff filed a Due Process Complaint against the District of Columbia Public Schools ('DCPS'), the District of Columbia Office of the State Superintendent of Education ('OSSE'), and [the] BOP," claiming "that he had been denied a FAPE during the [2015–16 and 2016–17] . . . school years, while in the custody of [the] BOP," in violation of the IDEA. *Id.* at 6. The Hearing Officer dismissed "Plaintiff's administrative complaint . . . as to [the] BOP" on the ground that the IDEA only applied to state agencies. *Id.* at 6, 8. The officer also granted "judgment as a matter of law . . . as to claims against DCPS and OSSE" on the ground that "the IDEA does not place responsibility on State or local education agencies to provide a FAPE for individuals with disabilities incarcerated in federal correctional facilities." *Id.* at 8.

---

[2] This section is uncontested, save for one fact: Plaintiff objects that he was arrested at age eighteen, not at age seventeen. Dkt. 26 at 1. The Court agrees, and will, accordingly, adopt the R&R's "Background" section with this caveat.

### B. Procedural History

After his release, Plaintiff initiated this action to set aside the Hearing Officer Determination. Dkt. 1 at 14 (Compl. Prayer). This Court referred the case, pursuant to Local Civil Rules 72.2 and 72.3, to Magistrate Judge G. Michael Harvey. Minute Order (Mar. 6, 2017). Plaintiff then filed an amended complaint in April 2017, adding a cause of action under Section 504 of the Rehabilitation Act. Dkt. 13 at 12–14 (Am. Compl. ¶¶ 39–51). Both Defendants moved to dismiss Plaintiff's amended complaint. Dkt. 14; Dkt. 16. Magistrate Judge Harvey issued a R&R granting the BOP's motion to dismiss in its entirety and denying the District's motion to dismiss Plaintiff's IDEA claim. Dkt. 25 at 2.

Specifically, the R&R concluded that Plaintiff failed to state a claim under the Rehabilitation Act because he could not show that either the BOP or the District's refusal to provide him with a FAPE was in bad faith. Dkt. 25 at 29. With respect to Plaintiff's IDEA claim against the BOP, the R&R concluded that the BOP was not subject to the IDEA, notwithstanding the Revitalization Act's broad language charging the BOP with the "custody, care, subsistence, education, treatment[,] and training" of individuals like Plaintiff, *see* Pub. L. No. 105–33, § 11201(b). Dkt. 25 at 14–20. The R&R, in contrast, did not dismiss Plaintiff's IDEA claim against the District. Instead, it found that the District's obligation to provide a FAPE is triggered by a child's residency, Dkt. 25 at 21, and that this obligation is not terminated when the child is in federal custody, Dkt. 25 at 22–24.

Plaintiff objects to the R&R's dismissal of his IDEA claim against the BOP and the dismissal of his Rehabilitation Act claims against both Defendants. Dkt. 26. As to the IDEA claim, Plaintiff argues that the BOP is subject to the IDEA because it "assumed responsibility for the 'education' of . . . individuals [like Plaintiff]" through the Revitalization Act. *Id.* at 3 (quoting Pub. L. No. 105–33, § 11201(b)). Plaintiff also contends that holding the District—but

4

not the BOP—responsible for providing individuals, like Plaintiff, a FAPE replaces their "absolute right" to a FAPE under the IDEA with one "contingent" on the cooperation of the BOP, resulting in their disparate treatment. *Id.* at 4–5. Finally, Plaintiff avers that his Rehabilitation Act claims should not be dismissed because he adequately alleged that Defendants acted in bad faith. *Id.* at 6–8.

The District objects to the R&R's denial of its motion to dismiss Plaintiff's IDEA claim on three grounds. First, the District asserts that the Revitalization Act "carve[s] out" an exception to the text of the IDEA because it provides that the "BOP—rather than the District—is responsible for the education of felony offenders of the D.C. Code sentenced as adults." Dkt. 27 at 10. Second, the District argues that under the plain language of 20 U.S.C. § 1412(a)(11)(C), it is only "required to ensure that its *own* facilities comply with the IDEA;" here, it has no authority over the BOP. Dkt. 27 at 12; *see also id.* at 19–20 (arguing that the R&R "erred by finding de facto that the District is required to force BOP to provide a FAPE to [D.C.] residents in [the] BOP's custody"). Finally, the District contends that the R&R ignores the import of two Department of Education ("DOE") opinion letters and Fourth Circuit precedent that, in its view, compels a contrary result. *Id.* at 16–19.

## II. LEGAL STANDARD

Under Rule 72(b) of the Federal Rules of Civil Procedure, once a magistrate judge issues a report and recommendation on a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court reviews "only those issues that the parties have raised in their objections." *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016) (quoting *Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997)). Those objections cannot "present new

5

initiatives" that were not put before the magistrate judge. *Id.* (citation omitted). After reviewing the magistrate judge's recommendations and timely objections to it, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Because the entirety of Magistrate Judge Harvey's R&R has been objected to—except for the Background section— the Court will first review de novo the R&R's disposition of Plaintiff's IDEA claims against the BOP and the District before turning to Plaintiff's Rehabilitation Act claims against both Defendants.

## III. ANALYSIS

**A.      Plaintiff's IDEA Claims**

1.      *BOP*

Notwithstanding Plaintiff's objections, the Court will adopt in full the R&R's disposition of Plaintiff's IDEA claim against the BOP. *See* Dkt. 25 at 10–20. Plaintiff's policy objections and reference to the Revitalization Act's language are insufficient to overcome the clear statutory text of the IDEA, which expressly provides that "[a] *State* is eligible" for federal funds under the IDEA so long as it has "policies and procedures to ensure that *the State* meets" the IDEA's conditions, including the provision of a FAPE, 20 U.S.C. § 1412(a) (emphasis added); *accord Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295 (2006) ("Our resolution of the question presented in this case is guided by the fact that Congress enacted the IDEA pursuant to the Spending Clause."). Because the meaning of "state" in the IDEA is "plain and unambiguous," and the BOP is a federal agency receiving no funds under the IDEA, that "ends" the Court's inquiry. *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002).

Accordingly, for the reasons set forth in the R&R, *see* Dkt. 25 at 10–20, the Court will dismiss Plaintiff's IDEA claim against the BOP.

2. *District of Columbia*

The Court also agrees with the R&R's denial of the District's motion to dismiss Plaintiff's IDEA claim, *see* Dkt. 25 at 21–27, but on different grounds. Magistrate Judge Harvey reasoned that the IDEA requires states to ensure that a FAPE is "available to all children with disabilities residing in the State," 20 U.S.C. § 1412(a)(1)(A), even if the child "attends a school subject to a different sovereign," Dkt. 25 at 23. The R&R's reasoning has considerable force. *See, e.g.*, *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 86 (D.D.C. 2007) (holding that the District was required to fulfill its IDEA obligations to a D.C. resident who attended school in Connecticut); *Hester v. District of Columbia*, 433 F. Supp. 2d 71, 73 (D.D.C. 2006) (noting that the District entered into a consent order to provide a D.C. resident with a FAPE while he was incarcerated in Maryland state prison), *rev'd on other grounds,* 505 F.3d 1283 (D.C. Cir. 2007). But, in the Court's view, it is unnecessary to resolve the broader question whether states are, under all circumstances, obligated to provide a FAPE to resident children, even when they are held in federal custody for committing a violation of federal law. The Court, instead, limits its analysis to the narrower—and ultimately dispositive—question whether the District is obligated to provide a FAPE to children who are convicted as adults under the D.C. Code and held, pursuant to the Revitalization Act, in the BOP's custody.

The District does not dispute that the plain text of the IDEA generally requires states to provide a FAPE to "children who are convicted as adults under state law and incarcerated in an adult prison." 20 U.S.C. § 1414(d)(7) (delineating IDEA protections for such children); *id.* § 1412(a)(11)(C) (permitting delegation of "responsibility of ensuring that the requirements

7

of this subchapter are met" to "any public agency in the State"). This means that, ordinarily, a state is required to provide a FAPE to all qualifying residents who are convicted under that state's laws and incarcerated in that state's correctional facilities. In this case, however, there is a wrinkle: Although Plaintiff was convicted under the D.C. Code, the Revitalization Act shuttered the District's prison system and transferred all offenders to the custody of the BOP. *See* Pub. L. No. 105–33, § 11201. Accordingly, although Plaintiff was held in the custody of the BOP, the BOP was acting—pursuant to the Revitalization Act—in the District's stead. The District argues that this extinguished its IDEA obligations to Plaintiff for three reasons: (1) the Revitalization Act transferred the District's obligations under the IDEA to the BOP; (2) the DOE's opinion letters and Fourth Circuit precedent hold that the IDEA does not extend to children in federal custody; and (3) the District has no access to children held by the BOP. None of these reasons is persuasive.

First, there is no basis for concluding that the Revitalization Act impliedly repeals, or, in the District's words, "carve[s] out" an exception to, Dkt. 27 at 10, the District's obligations under the IDEA. "The cardinal rule is that repeals by implication are not favored." *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936). Accordingly, "an implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" *Branch v. Smith*, 538 U.S. 254, 273 (2003) (quoting *Posadas*, 296 U.S. at 503).

To state the obvious, the Revitalization Act does not cover the whole subject of the IDEA. Thus, if the Revitalization Act impliedly repealed the relevant portion of the IDEA, it is because the Revitalization Act's direction that "the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment[,] and training" of individuals "who ha[ve] been

8

sentenced to incarceration pursuant to the [D.C.] Official Code," Pub. L. No. 105–33, § 11201(b), is in "irreconcilable conflict" with the District's IDEA obligations to provide "children who are convicted as adults under state law and incarcerated in an adult prison" with a FAPE, 20 U.S.C. §§ 1412(a), 1414(d)(7). "When two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed Congressional contention to the contrary, to regard each as effective." *FCC v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 304 (2003) (citation omitted).

Coexistence is surely possible here. That the Revitalization Act requires the BOP to take custody of and to bear financial responsibility for D.C. offenders—including their "care, subsistence, education, treatment[,] and training," Pub. L. No. 105–33, § 11201(b)—does not prevent the District from holding an independent obligation to ensure that those in the BOP's custody who are disabled receive a FAPE. Indeed, neither the language nor the legislative history of the Revitalization Act even mentions the IDEA, let alone suggests that Congress intended to transfer the District's IDEA obligations in these or any other circumstances to the BOP. *See id*. And the mere inclusion of the word "education" in a laundry list of financial responsibilities in the Revitalization Act does not evince a "clearly expressed Congressional contention to the contrary." *NextWave*, 537 U.S. at 304. This is especially so when considering the statutory structure of the IDEA, which conditions *state* funding on *state* compliance with the conditions set forth in the Act. *See* 20 U.S.C. § 1412(a).

Second, the Court adopts the reasons set forth in the R&R for concluding that the District's reliance on the DOE's opinion letters and the Fourth Circuit case, *G. ex rel. REG v. Fort Bragg Dependent Schools*, 343 F.3d 295 (4th Cir. 2003), is misplaced. *See* Dkt. 25 at 24–26. In brief, the District has failed to explain why Plaintiff's placement in the BOP extinguishes

its obligations under the IDEA when the statute expressly applies to individuals in "adult or juvenile *Federal*, State, or local correctional institutions." 20 U.S.C. § 1415(m)(1)(D) (emphasis added). The fact that the DOE has, in a notice of proposed rulemaking, stated that it "would not include the reference, from the statute, to Federal correctional institutions" because, in its view, "[s]tates do not have an obligation to provide special education and related services under the Act to individuals in Federal facilities," 70 Fed. Reg. 35,782, 35,810 (June 21, 2005), carries little force. This interpretation—which contradicts the plain text of the IDEA—is afforded no deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Third, and finally, the District's policy arguments—that it would be difficult to gain access to children in the BOP's custody, Dkt. 27 at 11; that BOP would be unlikely to cooperate with the District because "it has no interest in complying with the IDEA," *id.* at 16; and that any attempts to provide a FAPE under such circumstances would be costly, *id.* at 17—raise valid pragmatic challenges, but have no bearing on the correct interpretation of the IDEA. *See Goldring v. District of Columbia*, 416 F.3d 70, 77 (D.C. Cir. 2005) ("[T]his line of argument—based on considerations of public policy rather than statutory integration—is, in our view, addressed to the wrong branch of government under our constitutional design."). It is not for this Court to equitably divide responsibilities between the District and the BOP. *See id.* ("Our job is to interpret the law as it is, not as it should be.").

In any event, as the R&R correctly concludes, "the IDEA does not require [the District] to send personnel and supplies to federal prisoners in order to fulfill its obligations." Dkt. 25 at 27. Possible forms of relief include "'the establishment of a fund to be spent on the child's

education,' a funding agreement with a contractor or the BOP to provide [the] FAPE, or post-incarceration compensatory education services." *Id.* (internal citations omitted) (first quoting *D.F. v. Colingswood Borough Bd. of Educ.*, 694 F.3d 488, 498 (3d Cir. 2012), then citing *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005)). These pragmatic solutions undermine the District's bald assertion that fulfilling its IDEA obligations in this circumstance would be impracticable.

For the foregoing reasons, the Court will deny the District's motion to dismiss Plaintiff's IDEA claim.

**B.  Plaintiff's Rehabilitation Act Claims**

Finally, the Court agrees with, and adopts, the R&R's analysis dismissing Plaintiff's Rehabilitation Act claims. *See* Dkt. 25 at 28–29. The Court, however, writes separately to address whether Plaintiff's claims are independently barred for failure to exhaust. Because this potentially implicates the Court's subject matter jurisdiction, the Court must confront this "unsettled (and thorny) question," *id.* at 28 n.14.

As a threshold matter, the Court concludes that Plaintiff was required to follow the IDEA's exhaustion requirements for his Rehabilitation Act claims. Subsection 1415(*l*) of the IDEA expressly states that "before filing a civil action under [the Rehabilitation Act] seeking relief that is also available under [the IDEA], the procedures under subsections (f) and (g) [of the IDEA] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*). In *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), the Supreme Court held that the IDEA's administrative procedures apply to all plaintiffs seeking "relief for the denial of a free appropriate public education ['FAPE']." *Id.* at 754. The Court clarified, however, that "complaint[s] seeking redress for . . . other harms," say, "some

refusal to make an accommodation" that "might injure [a child] in ways unrelated to a FAPE," are not subject to these requirements. *Id.*

Here, the basis for Plaintiff's Rehabilitation Act claims is the denial of a FAPE, Dkt. 1 at 12, but one element of the relief that he seeks —"compensatory damages," *id.* at 14 (Compl. Prayer)—is only available under the Rehabilitation Act, not the IDEA. Accordingly, whether Plaintiff's Rehabilitation Act claims are subject to the IDEA's exhaustion requirements is an open question. *See Fry*, 137 S. Ct. at 754 n.8 ("[W]e do not address here . . . a case in which a plaintiff, although charging the denial of FAPE, seeks a form of remedy that an IDEA officer cannot give—for example, . . . money damages for resulting emotional injury." (citation omitted)). Although the D.C. Circuit has not yet weighed in on the issue, other circuit courts have held that "[a] plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process." *F.H. ex rel. Hall v. Memphis City Schs.*, 764 F.3d 638, 643 (6th Cir. 2014) (quoting *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 918 (6th Cir. 2000)); *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 873 (9th Cir. 2011) (en banc) (noting that the First, Sixth, Seventh, Tenth, and Eleventh Circuits also take the same position), *abrogated on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

It is unclear here on what grounds Plaintiff is seeking compensatory damages. Unlike the plaintiff in *Fry*, who alleged emotional harm, Brown's only asserted injury is the denial of a FAPE itself. *See* Dkt. 1 at 12–14 (Compl. ¶¶ 39–51). As such, the measure of damages to compensate him for that denial exactly overlaps with the "compensatory education" he is requesting. *Id.* at 14 (Compl. Prayer). As the Ninth Circuit noted in *Payne*: "If the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling—relief available

under the IDEA—then the IDEA requires exhaustion." 654 F.3d at 877. Accordingly, the Court holds that Plaintiff's Rehabilitation Act claims are governed by the IDEA's exhaustion requirements.

Applying those requirements, the Court must address whether Plaintiff's failure to raise his Rehabilitation Act claims in an administrative complaint is a jurisdictional bar.[3] As the R&R correctly notes, there are conflicting decisions from this Court on the issue. Dkt. 25 at 28 n.14; *compare, e.g.*, *T.H. v. District of Columbia*, 255 F. Supp. 3d 55, 58–59 (D.D.C. 2017) (holding that IDEA exhaustion in non-jurisdictional), *with Douglas v. District of Columbia*, 65 F. Supp. 3d 225, 228 (D.D.C. 2014) (holding that IDEA exhaustion is jurisdictional), *and Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 60 (D.D.C. 2010) (same)). In the absence of controlling D.C. Circuit precedent, the Court concludes that the IDEA's exhaustion requirement is not a jurisdictional bar. The Court is persuaded by the reasoning in *T.H.*, which, in turn, relies on the Ninth Circuit's en banc decision in *Payne*, 653 F.3d at 867–71. The Court agrees that "in light of a spate of Supreme Court cases clarifying the difference between provisions limiting [the courts'] subject matter jurisdiction . . . and 'claims processing provisions,'" the IDEA's exhaustion requirement "is not jurisdictional because 'it is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions.'" *T.H.*, 255 F. Supp. 3d at 59 (quoting *Payne*, 653 F.3d at 867, 870–71)). The Court

---

[3] The Court notes that the D.C. Circuit has held, in the context of administrative exhaustion requirements for the Rehabilitation Act, that wholesale failure to file an administrative complaint is a jurisdictional bar. *See Doak v. Johnson*, 798 F.3d 1096, 1103–04 (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). This, however, has no relevance to Plaintiff's claims, which are solely predicated on the denial of a FAPE, and are consequently governed by the IDEA's exhaustion requirements. *See* 20 U.S.C. § 1415(*l*); *Fry*, 137 S. Ct. at 752 ("Section 1415(*l*) requires that a plaintiff exhaust *the IDEA's procedures* before filing an action under . . . the Rehabilitation Act." (emphasis added)).

is unpersuaded, moreover, by the decisions of this Court that hold to the contrary. *See, e.g.*, *Douglas*, 65 F. Supp. 3d at 228; *Douglass*, 750 F. Supp. 2d at 60. Those decisions do not address the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), which adopted the clear statement rule, *id.* at 515–16, and instead, ultimately rely on *Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005), which preceded *Arbaugh*.

Given that the Court concludes that IDEA exhaustion is non-jurisdictional, Defendants bore the burden of asserting Plaintiff's failure to exhaust as an affirmative defense. *T.H.*, 255 F. Supp. 3d at 59. They failed to do so. The District never raised the issue in its motion to dismiss, and the BOP dedicated only one sentence to that effect in its motion: "Although Plaintiff did not plead a violation of the Rehabilitation Act in his Administrative Complaint, Plaintiff now claims that Section 504 of the Rehabilitation Act entitles him to a FAPE," Dkt. 16 at 20. That is not enough. As such, Plaintiff's Rehabilitation Act claims are not barred for failure to exhaust.

The Court, nevertheless, agrees with the R&R's analysis, Dkt. 25 at 28–29: Plaintiff failed to state a claim under Section 504 of the Rehabilitation Act because he failed to allege that "something more than a mere failure to provide the 'free and appropriate public education' required by the IDEA occurred.'" *D.L. v. District of Columbia*, 109 F. Supp. 3d 12, 23 (D.D.C. 2015) (internal quotation marks omitted) (quoting *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001)). Accordingly, the Court will dismiss Plaintiff's Rehabilitation Act claims against the BOP and the District without prejudice.

## CONCLUSION

For these reasons, the Magistrate Judge's Report and Recommendation, Dkt. 25, is **ADOPTED** in part and **MODIFIED** in part, as described above. The Court **GRANTS** the BOP's motion to dismiss and for summary judgment, Dkt. 16, and **GRANTS** in part and **DENIES** in part the District's motion to dismiss, Dkt. 14. Plaintiff's IDEA claim against the BOP is hereby dismissed, and Plaintiff's Rehabilitation Act claims against the BOP and the District are hereby dismissed without prejudice.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 24, 2017