UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHON BROWN,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

Civil Action No. 17-348 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephon Brown, a lifelong resident of the District of Columbia, was convicted of a felony under the D.C. Code and incarcerated in a Bureau of Prisons ("BOP") facility pursuant to the National Capital Revitalization and Self Government Improvement Act of 1997, Pub. L. No. 105-33, § 11201, 111 Stat. 251, 734 (1997) (codified at D.C. Code § 24-101) [hereinafter "Revitalization Act"]. While incarcerated, Brown was not afforded "any special education services" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*., because both the BOP and the District denied responsibility for providing him a free and appropriate education ("FAPE"). Dkt. 25 at 1, 5. The BOP argued that, as a federal entity, it is not subject to the IDEA, Dkt. 16 at 8–9, and the District argued that its responsibilities to Brown ended when he entered into BOP custody, Dkt. 14 at 6–7. Caught in a legal limbo, Brown sued both Defendants for violating the IDEA. Dkt. 1 (Compl.).

The Court previously held that, under the plain language of the IDEA, the District—and *not* the BOP—was obligated to provide Brown a FAPE while he was in BOP custody. *See Brown v. District of Columbia*, 324 F. Supp. 3d 154, 159–60, 162 (D.D.C. 2018). The District now asks the Court to reconsider that decision, arguing that (1) § 1415(k)(6) of the IDEA

"precludes" the Court's interpretation "because the Court's interpretation would . . . conflict with the legitimate law enforcement aims of the BOP and the Superior Court for the District of Columbia," Dkt. 39 at 1; (2) the Court misconstrued the District's argument as positing that the Revitalization Act impliedly repealed the IDEA as applied to D.C. felons incarcerated by the BOP, *id.* at 13; and (3) in any event, the Revitalization Act did, in fact, shift responsibility from the District to the BOP for the education of D.C. felons incarcerated by the BOP, *id.* at 14–16. The Court is unpersuaded and will, accordingly, **DENY** the District's motion for reconsideration. Dkt. 39.

## I. BACKGROUND

The background of this matter is discussed in detail in Magistrate Judge Harvey's Report and Recommendation ("R&R"), Dkt. 25, and in this Court's prior opinion, *see Brown*, 324 F. Supp. 3d at 158–59. To summarize, Plaintiff is a lifelong resident of the District who has been eligible for special education and related services since elementary school. *Id*. at 158. In 2014, when he was eighteen, Plaintiff was arrested and charged with violating D.C. law. *Id*. While awaiting trial, Plaintiff was held at the D.C. Central Detention Facility, where he continued to receive special education services pursuant to his Individualized Education Program ("IEP"). Dkt. 25 at 5. After he was tried and convicted as an adult, however, Plaintiff was transferred to the Hazelton Federal Correctional Institution ("FCI"), and those services ceased. *Id*. Only after his release in November 2016, when Plaintiff resumed his high school education, did he once again receive special education services pursuant to the IDEA. *Id.*

Shortly before his release from FCI Hazelton, Plaintiff filed a due process complaint against the District and the BOP, alleging that he was denied access to a FAPE while incarcerated. *Id.* at 6. The Hearing Officer dismissed Plaintiff's complaint against the BOP on

2

the ground that the federal government is not subject to the IDEA and dismissed his complaint against the District on the ground that the IDEA does not impose any responsibilities on state or local officials while an individual with disabilities is incarcerated at a federal correctional facility.  *Id.* at 6–8.  Plaintiff then brought suit in this Court, seeking to set aside the Hearing Officer's determination, and the Court referred the matter to a magistrate judge for an R&R.  *Brown*, 324 F. Supp. 3d at 158.

As explained in greater detail in this Court's prior opinion, Magistrate Judge Harvey rejected the Hearing Officer's conclusion that the combination of the IDEA and the Revitalization Act created a "Special Education No Man's Land" in which neither the BOP nor the District has any obligation to provide benefits under the IDEA to individuals convicted of violating D.C. law who are incarcerated at a BOP facility.  *Id*.  The R&R concluded that the IDEA does not apply to the BOP; rather, the statute applies only to states eligible to receive federal funds under the IDEA.  Dkt. 25 at 14–20.  That conclusion, however, did not leave children incarcerated in federal facilities without IDEA benefits because the R&R reasoned that "a FAPE is triggered by a child's residency," and that obligation is not terminated when the child is in federal custody.  *Id.* at 21.

Plaintiff filed timely objections to the R&R's conclusion that the IDEA does not bind the BOP, Dkt. 26, and the District filed timely objections to the R&R's conclusion that its obligations under the IDEA continued while Plaintiff was held in BOP custody, Dkt. 27.  The Court adopted in full the R&R's conclusion and analysis with respect to the BOP.  *Brown*, 324 F. Supp. 3d at 157.  With respect to the District, the Court's analysis differed from the R&R in two respects.  First, the Court concluded that it was unnecessary to resolve the question whether all states are responsible for ensuring that their residents who are incarcerated in federal prisons

3

receive FAPEs. *Id.* at 160. Although noting that the R&R's reasoning carried "considerable force," the Court limited its analysis to the question whether children who are convicted as adults for violations of D.C. law and who are incarcerated by the BOP pursuant to the Revitalization Act are—like all other children serving prison sentences for state-law violations—entitled to FAPEs. *Id.* Second, the Court concluded that it needed to resolve the question whether the requirement that Plaintiff exhaust his administrative remedies under the Rehabilitation Act posed a jurisdictional bar to that claim, and the Court concluded that the requirement, in this context, is non-jurisdictional. *Id.* at 162–64. Having reached that conclusion, the Court went on to consider Plaintiff's Rehabilitation Act claim on the merits and agreed with the conclusion set forth in the R&R that the claim lacked merit. *Id.* at 163. The Court, accordingly, granted the BOP's motion to dismiss and granted in part and denied in part the District's motion to dismiss. *Id.*

Approximately a month later, the District filed the instant motion for reconsideration. Dkt. 39. Plaintiff opposed that motion, Dkt. 47, and the District filed a reply brief, Dkt. 48.

## II. LEGAL STANDARD

Because the Court has yet to enter final judgment, the District's motion for reconsideration is governed by Federal Rule of Civil Procedure 54(b), which permits the Court to revisit any order that adjudicates "fewer than all the claims or rights and liabilities of fewer than all the parties . . . at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b). Reconsideration of interlocutory orders is permitted "as justice requires." *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (citation omitted). Courts in this Circuit have recognized that relief is appropriate "when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Murphy v. Exec. Office for U.S. Attorneys*, 11 F. Supp. 3d 7, 8 (D.D.C. 2014) (quoting *Zeigler v.*

*Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)); *see also Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Although the decision whether to reconsider an order lies within the Court's sound discretion, considerations of judicial economy and the obligation of the courts "to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, require "good reason" before reopening matters once resolved. *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 76 (D.D.C. 2008).

## II. ANALYSIS

The District moves for reconsideration on three grounds. *First*, it argues that the Court "failed to address the District's argument regarding the implications of 20 U.S.C. § 1415(k)(6)," which, according to the District, precludes the application of the IDEA to individuals in BOP custody. Dkt. 39 at 5 (capitalization omitted); *see also id.* at 5–13; Dkt. 48 at 3. *Second*, the District contends that the Court's holding that the Revitalization Act did not impliedly repeal the IDEA as applied to D.C. Code felons incarcerated by the BOP "was a question not squarely presented to the Court and [was] not necessary to resolving the parties' dispute." Dkt. 39 at 13–14. *Third*, the District argues that "reading the relevant statutes *all together*, the District ceased being responsible for the education of D.C. Code felons in BOP custody by application of the Revitalization Act." Dkt. 48 at 2. For the reasons explained below, the Court is unpersuaded.

A.  **Subsection 1415(k)(6) of the IDEA**

The District first contends that the Court failed to address one of its central arguments— that 20 U.S.C. § 1415(k)(6) precludes the District from providing a FAPE to a child convicted of violating D.C. law who is incarcerated by the BOP. That subsection of the IDEA provides:

> Nothing in this subchapter shall be construed to prohibit an agency from reporting a crime committed by a child with a disability to appropriate authorities or to prevent State law enforcement and judicial authorities from

5

>   exercising their responsibilities with regard to the application of Federal and
>   State law to crimes committed by a child with a disability.

*Id.* According to the District, because "a function of the Superior Court for the District of Columbia is to sentence felons, like . . . Brown, to BOP custody;" because "[s]uch persons shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed;" and because several provisions of the IDEA are incompatible with federal imprisonment, § 1415(k)(6) precludes application of the IDEA to those held in BOP custody. Dkt. 39 at 7–9.

Failing to consider or misunderstanding an important argument is, to be sure, a proper ground for reconsideration. *See King v. U.S. Dep't of Justice*, 292 F. Supp. 3d 182, 187 (D.D.C. 2017). That, however, is not what happened here. Although the District is correct that the Court did not discuss § 1415(k)(6) in its opinion, the District ignores the fact that the Court adopted the portion of the R&R that considered—and rejected—the District's § 1415(k)(6) argument. In the words of the R&R:

>   Finally, the District of Columbia asserts that it "lacks authority to control [the] BOP's provision of educational instruction" and that the IDEA may not be interpreted "to prevent State law enforcement and judicial authorities [from] exercising their responsibilities with regard to the application of Federal and State law to crimes committed by a child with a disability." However, it does not explain how requiring it to abide by statutory requirements to provide a FAPE to Plaintiff would so interfere. It is worth noting that the IDEA does not require the District of Columbia to send personnel and supplies to federal prisons in order to fulfill its obligations, to "force[] . . . [the] BOP to permit the District to educate [Plaintiff]," or to force[] . . . [the] BOP to enter into some sort of agreement regarding his education." . . . Among the possible forms of relief are "the establishment of a fund to be spent on the child's education," a funding agreement with a contractor or the BOP to provide Plaintiff's FAPE, or post-incarceration compensatory educational services to make up for the failure to provide Plaintiff a FAPE while he was in BOP custody.

Dkt. 25 at 26–27 (internal citations omitted). Without pointing to any other "intervening change in the law," "discovery of new evidence," or "clear error," *Murphy*, 11 F. Supp. 3d at 8, the

6

District is seeking to rehash the same argument it unsuccessfully made before the magistrate judge and before this Court. That does not constitute a "good reason" to reopen the Court's decision.

But even if the Court were again to address the District's argument on the merits, the result would not change. The District's motion for reconsideration fails to explain why the District's obligation to provide Brown a FAPE would "prevent State law enforcement and judicial authorities from exercising their responsibilities with regard to the application of Federal and State law to crimes [he] committed." 20 U.S.C. § 1415(k)(6). To be sure, the Revitalization Act charges the BOP with "the custody, care, subsistence, education, treatment[,] and training" of D.C. offenders, like Brown. D.C. Code § 24-101(b). But nothing in the Revitalization Act or in 18 U.S.C. § 3621(b), which sets forth the BOP's responsibilities for federal inmates' care, precludes the District from having a concurrent obligation—under the IDEA—to provide Brown a FAPE. Contrary to the District's assertions, the Court's interpretation of the IDEA does not impinge on the operations of the BOP. Rather, it imposes an obligation on *the District* to work with the BOP to provide qualifying individuals a FAPE and, if that is not possible, to provide compensatory education post-incarceration or other appropriate benefits.

With respect to the first of these options, it rings hollow for the District to insist that it cannot cooperate with the BOP to provide a FAPE to D.C. Code felons incarcerated in federal prison, without pointing to any evidence that it has ever tried to do so. *See* Dkt. 47 at 6 n.2 (Plaintiff noting that "[t]he District has never tried to conduct . . . evaluations, or to cooperate with [the] BOP to ensure the evaluations take place, and it can present no evidence that to do so is impossible"). The District argues, for example, that the BOP's telephone policy would preclude inmates from participating in an IEP meeting conference call. Dkt. 48 at 4–5. But, the

7

District provides no evidence that the BOP would refuse to provide any accommodations to those who qualify for special education services under the IDEA.[1] With respect to the second option, the District's argument is circular: It contends that compensatory education is available only to those children who have been denied a FAPE, and because Plaintiff was in the BOP's custody, he did not have a right to a FAPE in the first place. Dkt. 39 at 12. The District fails to identify any authority, moreover, that would support such a crabbed view of the IDEA, which was enacted "to ensure that *all* children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and [to] prepare them for further education, employment, and independent living," 20 U.S.C. § 1400(d)(1)(A) (emphasis added).

Finally, it bears note that the District's argument stretches a provision of the IDEA designed to preserve the authority of state enforcement and judicial authorities to enforce the criminal law against children with disabilities to the snapping point. Although the Court has little doubt that the District lacks authority to control or to direct the day-to-day operations of the BOP, the District cites no authority for the proposition that § 1415(k)(6)—which *preserves* state authority—is the source of such a restriction. In any event, nothing in § 1415(k)(6) or in any other provision of law that the District cites precludes the District from making efforts to work cooperatively with the BOP to provide children with disabilities who are serving D.C. sentences

---

[1] The District does cite—in its objections to the R&R, *see* Dkt. 27 at 20—a case in which its "designated education providers" were denied access to a "D.C. public school student receiving special education services" who was convicted under Maryland law and incarcerated in a Maryland prison. *Hester v. District of Columbia*, 505 F.3d 1283, 1284 (D.C. Cir. 2007). There, the D.C. Circuit held that the District did not breach its agreement to provide the plaintiff with special education services when it attempted, but failed, to gain access to him in Maryland prison. *Id.* at 1287. *Hester* has no bearing, however, on whether *the BOP* will permit the District access to D.C. offenders, like Brown. In any event, the decision does not excuse the District from attempting to work with the BOP to provide special education services.

with the benefits to which they are entitled under the IDEA and, if necessary, from providing incarcerated children compensatory education after they are released.

**B.     Implied Repeal**

The District also argues that the Court erred in treating the question presented by this case as whether the Revitalization Act impliedly repealed the IDEA as applied to children convicted of crimes in the District and held by the BOP. Dkt. 48 at 2. That is incorrect. As Plaintiff observes, the issue of implied repeal was front and center in the parties' briefing. The District insists that it did not argue implied repeal but, instead, argued that "reading the relevant statutes all together, the District ceased being responsible for the education of D.C. Code felons in BOP custody by application of the Revitalization Act." Dkt. 48 at 2 (emphasis omitted). That is merely calling a rose by another name; if there is any distinction between the contention that the Revitalization Act terminated the District's IDEA obligations to D.C. felons and the contention that the Revitalization Act impliedly repealed the IDEA to the extent it applied to D.C. felons, the distinction is a fine one, and it is of no substantive import.

Regardless of the framing, the crux of the District's position is that the Revitalization Act supersedes the plain language of the IDEA, which requires that all states (including the District) that receive covered federal grants ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State," 20 U.S.C. § 1412(a)(1)(A). The text of the IDEA, moreover, affirms that this obligation continues while children with disabilities convicted under state law are incarcerated in adult prisons. *See id.* § 1412(a)(11)(C) (addressing assignment of responsibility for such children); *id.* § 1414(d)(7) (removing certain IDEA requirements for such children); *id.* § 1415(m)(1)(D) (providing that "all rights accorded to parents under this subchapter transfer to children who are incarcerated in an adult or juvenile

[f]ederal, [s]tate, or local correctional institution"). According to the District, the Revitalization Act supersedes the IDEA, because it assigns the BOP responsibility for "the custody, care, subsistence, education, treatment[,] and training" of those sentenced pursuant to D.C. law. D.C. Code § 24-101. That is, under the District's theory of the case, the Revitalization Act may not have mentioned the IDEA by name, but it relieved the District of its preexisting obligation to provide a FAPE for all disabled children in the District, including those who are incarcerated. The Court understood and rejected that argument.

**C.     Revitalization Act**

Regardless of whether the District's argument is framed as an implied repeal or a reassignment of the obligation to comply with the IDEA from the District to the BOP, it is unpersuasive. To support its position, the District again points to the text of the Revitalization Act and the its legislative history. *See* Dkt. 39 at 14–15. According to the District, both demonstrate that Congress intended for the "BOP to assume functions normally performed by state governments." *Id.* at 15. As the Court previously explained, however, the fact that Congress intended the BOP to assume the day-to-day costs of caring for D.C. offenders does not preclude the IDEA from imposing a separate obligation on the District to provide incarcerated D.C. felons with a FAPE. *Brown*, 324 F. Supp. 3d at 161. It reads too much into the lone appearance of the word "education" in the Revitalization Act to conclude that Congress intended, without elaboration, to reassign all of the District's IDEA obligations with respect to incarcerated children to the BOP, particularly in light of the fact that the IDEA is structured as a condition on receipt of federal grants, which the District continues to receive. *See Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide

10

elephants in mouseholes."); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295 (2006) ("Our resolution of the question presented in this case is guided by the fact that Congress enacted the IDEA pursuant to the Spending Clause."). And, as the Court has previously explained, it is equally untenable to conclude that Congress, again without elaboration, intended to deny IDEA benefits to disabled children convicted of violating D.C. law, unlike disabled children from every other state that receives IDEA grants. To the contrary, the text of the IDEA makes clear that Congress intended, subject only to express limitations, to provide "*all* children with certain physical or intellectual disabilities" access to a FAPE, *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017) (emphasis added), including children who are convicted as adults under state law and incarcerated in adult prisons, *cf.* 20 U.S.C. § 1412(a)(11)(C); *id.* § 1414(d)(7); *id.* § 1415(m)(1)(D).

Nothing contained in the Revitalization Act or the legislative history that the District invokes constitutes the type of clearly expressed exception that would relieve the District of the obligation it bears as an IDEA-grant recipient. *See FCC v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 304 (2003) ("When two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (citation and alteration omitted)). The Court, accordingly, reaffirms its conclusion, as explained in greater detail in its prior decision and in the R&R, that the District remained obligated to provide Plaintiff with a FAPE while he was incarcerated or to provide him with compensatory education after he was released, as required by the IDEA.

## CONCLUSION

For the foregoing reasons, the Court the District's motion for reconsideration, Dkt. 39, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  April 30, 2019